CORRIGAN, LEE & HALPIN v. HEUBLER et al.   (No. 7043.)

(Court of Civil Appeals of Texas. Dallas. April 25, 1914. Rehearing Denied May 23, 1914.)

1. MASTER AND SERVANT (§ 284*)—INJURY TO SERVANT—INDEPENDENT CONTRACTORS—EVIDENCE.

Evidence, in an action for injury to an employé *held* to make a question for the jury whether the person who employed plaintiff was an independent contractor, or merely a servant or agent of the general contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. § 284.*]

2. MASTER AND SERVANT (§ 88*)—INDEPENDENT CONTRACTORS—TEST OF RELATION.

The test of whether one is an independent contractor, or merely a servant or agent of the general contractor, is not whether they actually exercised control over the manner in which, or the means by which, the work was to be done, but whether they had the right to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

3. TRIAL (§ 252*)—MISLEADING INSTRUCTIONS—"WILLFULLY."

The word "willfully" sometimes means not merely voluntarily, but with a bad purpose; and from its use in connection with "knowingly," in an instruction that, if defendants willfully and knowingly furnished material, which caused the place where plaintiff was working to be inherently dangerous, they were negligent, the jury might conclude the court was of the opinion there was some evidence that defendants did this with a bad or evil intent, making it prejudicial; there being no such evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835, 7836.]

4. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Even if a statement of witness that boards bore concrete stains was a conclusion, its admission was harmless; the same testimony substantially having been given by other witnesses without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. EVIDENCE (§ 513*)—OPINIONS—EXPERTS.

Witness being a carpenter familiar with the strength of the character of the lumber in question, and having qualified as an expert to testify to the relative strength of a good piece of ship-lap lumber and the piece alleged to have given way, causing plaintiff's fall from a column, and whether or not such piece was strong enough to support plaintiff's weight, his testimony that, had a good piece of ship-lap been used in construction of the column, it would not have broken with a man of plaintiff's weight was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. § 513.*]

6. MASTER AND SERVANT (§ 268*)—INDEPEND-ENT CONTRACTORS—EVIDENCE.

A contract by a firm with a county to do work, providing against the firm subletting without the written consent of the county, in connection with evidence that there was no such consent, is admissible on the issue of one doing part of the work for the firm, being an independent contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 910; Dec. Dig. § 268.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by J. H. Heubler against Corrigan, Lee & Halpin and others. From a judgment for plaintiff against the named defendants, they appeal. Reversed and remanded.

Burgess, Burgess & Chrestman, of Dallas, for appellants. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

TALBOT, J. This suit was brought by the appellee Heubler against Bernard Corrigan, S. N. Lee, and J. F. Halpin, and the firm of Corrigan, Lee & Halpin, composed of said three persons, and against W. D. Gilkison, to recover damages for personal injuries alleged to have been received by plaintiff on the 2d day of October, 1911, while in the employ of all of said defendants, by falling from a temporary upright structure used in connection with certain work being done in the course of the construction of what is known as the Dallas and Oak Cliff Viaduct; the said Corrigan, Lee & Halpin being the general contractors for the building of said viaduct. The defendant Gilkison answered by general demurrer, general denial, and pleas of contributory negligence and assumed risk. The defendants Corrigan, Lee & Halpin answered by general demurrer, special exceptions, general denial, pleas of contributory negligence, and assumed risk. These defendants also pleaded that Gilkison was an independent contractor on that portion of the work on which plaintiff was engaged at the time he was hurt; that plaintiff was in the employ and under the direction of said independent contractor, and was not in the employ of Corrigan, Lee & Halpin, nor in any way subject to their supervision, direction, or control. Plaintiff by supplemental petition denied that Gilkison was an independent contractor, but was subject to the orders and control of defendants Corrigan, Lee & Halpin. The trial of the case resulted in a verdict and judgment in favor of the defendant Gilkison, and in favor of the plaintiff against Corrigan, Lee & Halpin, as a firm, and against S. N. Lee and J. F. Halpin individually, for the sum of $2,000; Bernard Corrigan, not being personally served with citation, did not answer. From the judgment rendered against them the appellants appealed.

[1] The first assignment of error complains of the court's refusal to give a special charge, requested by appellants at the conclusion of all the evidence, directing the jury to return a verdict in their favor. The proposition advanced under this assignment is that the evidence adduced conclusively showed that the defendant Gilkison was an independent contractor, in charge of the work upon which plaintiff was injured; that plaintiff was employed by Gilkison and under his exclusive control at the time he was injured, and therefore the peremptory instruction should have been given. We have reached the conclusion that this assignment and proposition should not be sustained. It is well settled in this state that, when the evidence is sufficient to make an issue, the question must be submitted to the jury. This is true, it is held by the Supreme Court, even though it might be that the trial judge or Court of Civil Appeals would set aside a verdict found upon the evidence. Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S. W. 399. In Cyc. p. 1547, the subject of independent contractors is discussed, and it is there said that the test of the relationship "is whether the employé represents his employer as to the result of the work only or as to the means as well as the result. If the employé is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor. If the employé is subject to the control of the employer as to the means, he is not an independent contractor." This is substantially the test laid down in Wallace v. Southern Cotton Oil Co., supra. In that case the question was whether the man Davis was a servant of the Cotton Oil Company, or an independent contractor "engaged in a pursuit free from the control of said company." Here the question is: Was Gilkison a servant of Corrigan, Lee & Halpin, or such a contractor? While the evidence may not, perhaps, be quite so strong to establish that the relationship existing between Gilkison and Corrigan, Lee & Halpin was that of master and servant as was the evidence in Wallace's Case to establish such relationship, yet, without expressing or intimating any opinion as to what weight should be given to it by a jury, we think it was sufficient to take the question to the jury.

There is no question but that Corrigan, Lee & Halpin were the general contractors engaged in the construction of the viaduct, and that whatever relation Gilkison bore to that

---

firm existed by virtue of a parol or verbal contract, and not by one in writing. Gilkison was irresponsible financially, and Corrigan, Lee & Halpin furnished all the material used by him and paid the employés working under him, as they paid other employés working on the viaduct. The contract entered into between Dallas county and the firm of Corrigan, Lee & Halpin for the construction of the viaduct provides that the latter "will not assign, transfer or sublet the aforesaid work, or any part thereof, without the written consent of the commissioners' court," and there was no proof of such consent. Some time during the progress of the work, the time not being definitely, and by direct testimony, shown, the firm of Corrigan, Lee & Halpin put employés not claimed to have been employed by Gilkison upon the work he was doing, and informed him that he was indebted to them in the sum of $600 or $800. At this time Gilkison gave up the contract he claims to have made with Corrigan, Lee & Halpin, and he says: "I did not stay on the work after that." At the time of the trial Gilkison had not paid the $600 or $800 owed by him, nor had he given to Corrigan, Lee & Halpin his note or other written evidence of said indebtedness. In this connection he testified:

"What I mean to say was that they simply wiped out the contract, and I had a moral obligation of about $800 with Corrigan, Lee & Halpin, and Mr. Halpin told me if I ever got in a financial condition to pay that $800 he would expect me to pay it."

It further appears that appellants' physician and surgeon who treated all their men when treatment was necessary, treated the appellee when he was hurt, at the instance of appellants, and that they paid him for his services. This physician testified:

"When they called me down there to treat Mr. Heubler, I went down there and treated him just like I did on other calls."

There was also some testimony tending to show that appellants, on more than one occasion, exercised authority and control over Gilkison in directing where he and the men under him should work, how the work should be done, and how the materials should be used in doing it, inconsistent with the idea that the work was under the exclusive control of Gilkison. These, we think, were facts and circumstances to be considered by the jury in connection with, perhaps, other circumstances shown, in determining the relation Gilkison bore to Corrigan, Lee & Halpin and justified the submission of that issue for their determination.

[2] The court instructed the jury that:

"If they believed from the evidence that the defendant Gilkison, in employing the plaintiff, Heubler, acted for and on behalf of the defendants Corrigan, Lee & Halpin, or if they found that defendants Corrigan, Lee & Halpin exercised, or had the right to exercise, control over the manner in which the work was to be done upon which plaintiff was engaged at the time he was alleged to have been injured, or over the means by which it was to be done, then, in ei-

167 S.W.—11

ther such event, Gilkison was not an independent contractor, but an employé and servant of Corrigan, Lee & Halpin."

This charge is attacked by appellants' fourth assignment of error, and its correctness challenged on the ground, among others, because it authorized the jury to find in favor of the plaintiff, Heubler, against the defendants Corrigan, Lee & Halpin, if they should find that said defendants *exercised* control over the manner or over the means in and by which the work was to be done upon which plaintiff was engaged, even though said defendants had no *right* to so control the manner or means of doing said work, and even though the jury did not find that they had such right. We think this charge went too far, and is materially erroneous in telling the jury, in effect, that, regardless of whether or not Corrigan, Lee & Halpin had the right to exercise control over the manner in which the work was to be done, or over the means by which it was to be done, yet, in either event, if Corrigan, Lee & Halpin exercised such right, Gilkison was not an independent contractor. The test of the relationship is the *right* to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. 26 Cyc. p. 1547. This error was emphasized by the court's refusal to give a special charge requested by appellants' counsel embodying the above test, and requires a reversal of the case. The answers made by counsel for appellee to this error in the charge have been carefully examined and considered, but we do not think either of them sufficent to justify the overruling of the assignment complaining of it. We call attention to the fact that this error was also repeated in the third paragraph of the court's charge, wherein the facts which would authorize a verdict in favor of the defendants Corrigan, Lee & Halpin were attempted to be enumerated.

[3] The twelfth assignment of error complains of the following portion of the court's charge, namely:

"If you find and believe from the evidence that defendant W. D. Gilkison was an independent subcontractor under the law as it is hereinbefore given you, and that the plaintiff was not the employé of defendants Corrigan, Lee & Halpin, but if you further find that said defendant firm controlled the method and furnished the material by which the work was being done by plaintiff at the time mentioned, and that such method or material, either alone or together, proximately caused such place where plaintiff was then working to be inherently dangerous, if it was inherently dangerous, and that said defendants Corrigan, Lee & Halpin willfully and knowingly furnished such agency, if they did, to be used as it was being used on said occasion in such employment, then said defendants would be guilty of negligence."

If this was a proper issue to be submitted at all in this case, which may be seriously questioned, then we think there was no evidence authorizing a finding that Corrigan,

Lee & Halpin "willfully" furnished any material whatever that caused the place where appellee was working when injured to be inherently dangerous. The word "willful" or "willfully" is variously construed. 'Among other definitions, it is said that it means, not merely voluntarily, but with a bad purpose. Used in connection with the word "knowingly," as it is in the charge in question, it would seem that the jury might conclude that the trial court was of opinion that there was some evidence which might authorize a finding that the defendants Corrigan, Lee & Halpin, with a bad purpose or evil intent, furnished Gilkison material which, either alone, or together with the method adopted in doing the work in which appellee was engaged, caused the place where he was at work when injured to be inherently dangerous. There was no such evidence, so far as is disclosed by the record, and the use of the word "willfully," if the charge in any event embraced an issue which should have been submitted to the jury and was otherwise proper, was calculated to unduly affect and influence them to the prejudice of appellants in arriving at a verdict. This much has been said with respect to the charge, more especially in view of another trial of the case.

[4] There was no material error in admitting the testimony of the plaintiff, Heubler, to the effect that the boards in the column on which the alleged accident occurred bore concrete stains. The testimony seems to have been offered in support of appellee's theory that said boards were secondhand lumber and defective, and it appears that the witness was familiar with the use to which the lumber is question had been put, and testified, in substance, that the use of the lumber about which he was speaking, in connection with the column, was not such as to expose it to concrete stains, and that the stains upon it must have been received at some other place. If, however, it be conceded that the statement of the witness was a mere conclusion, still its admission does not constitute reversible error, for the reason, if no other, that the same testimony substantially was given by other witnesses without objection.

[5] Nor do we think the court erred in admitting the testimony of the plaintiff, Heubler, to the effect that, had a good piece of ship-lap been used in the construction of the column from which appellee fell, it would not have broken with a man of appellee's weight. Appellee was a carpenter, familiar with the strength of the character of lumber in question, and sufficiently qualified himself as an expert to testify as to the relative strength of a good piece of ship-lap lumber, and the piece which is alleged to have given way and caused appellee to fall from the column, and whether or not the piece that gave way was strong enough to support the weight of appellee.

[6] We are further of the opinion that the court did not err, as complained of in appellants' eighth assignment of error, in admitting in evidence the contract between appellants and Dallas county. As said by counsel for appellee:

"Inasmuch as the contract with Dallas county by the defendant firm contained an agreement on the part of such firm that they would not sublet any part of the work incident to the contract, without the written consent of the county, and, inasmuch as it was shown that there was no such written consent, such provision of the contract was a declaration of intention not to so sublet, and was therefore an admission to be considered by the jury for what it was worth, that the contract with Gilkison was not one of subletting."

The court instructed the jury not to consider the contract, except as it might tend to show whether or not there was an independent contract made between the defendants Corrigan, Lee & Halpin, and W. D. Gilkison, and for no other purpose. We think the contract was clearly admissible for the purpose stated in the court's charge, and, in view of the limitation placed upon its consideration by the jury, appellants have no just cause of complaint.

There are assignments of error that have not been discussed. They either present questions that have been disposed of adversely to appellants in the disposition made of assignments that have been discussed, or that are not at all likely to arise upon another trial, or which afford no good reason for reversal.

For the reasons indicated, however, the judgment is reversed, and the cause remanded.

Reversed and remanded.