## PETROLEUM CASUALTY CO. v. SEALE et al. (No. 9095.)

Court of Civil Appeals of Texas. Galveston. Feb. 2, 1928.

Rehearing Denied March 8, 1928.

**1. Master and servant ☞385(14)—Permanent partial incapacity from foot injury, not amounting to total loss of foot or its use, held compensable at 60 per cent. of average wage for period not exceeding 300 weeks (Rev. St. 1925, art. 8306, § 12).**

Where there is permanent partial incapacity from injury to foot, which does not amount to total loss of foot or its use, it is compensable under the last paragraph of Rev. St. 1925, art. 8306, § 12, at 60 per cent. of average weekly wages for period not exceeding 300 weeks, notwithstanding that, under specific injury provisions of such section, recovery for total loss of foot is limited to 60 per cent. of average weekly wages for 125 weeks.

**2. Master and servant ☞401—Petition for compensation, alleging foot injury, held not to limit recovery to scheduled compensation for injury to specific member (Rev. St. 1925, art. 8306, §§ 10, 12).**

In proceeding under the Workmen's Compensation Act, petition alleging injury to foot of laborer, whose employment required use of two good and sound feet, *held* sufficient under either Rev. St. 1925, art. 8306, § 10, or last paragraph of section 12, and did not limit recovery to scheduled compensation for injury to

specific member alone prescribed in the other paragraphs of section 12.

**3. Master and servant ☞417(5)—On appeal, petition, not excepted to, will be given benefit of every reasonable intendment.**

Where petition under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309) is not excepted to, it will be given benefit of every reasonable intendment on appeal.

**4. Master and servant ☞405(6)—In proceeding for workman's compensation, evidence held to support finding of 85 per cent. permanent partial incapacity for foot injury (Workmen's Compensation Act).**

In proceeding under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309) for foot injury, evidence *held* sufficient to support finding of 85 per cent. of permanent partial incapacity, where injury sustained when 300 or 400 pound beam fell on foot, impaired claimant's strength and general efficiency, caused him pain, and made it impossible for him to do any sort of heavy work as laboring man.

**5. Master and servant ☞405(6)—Witnesses testifying to injured workman's incapacity need not specify percentage of incapacity in figures.**

In proceeding under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), it is not essential that witnesses specify percentage of incapacity in figures, since jury are presumably men of ordinary intelligence, who can properly make their own estimate of percentage of impairment.

**6. Master and servant ☞417(5)—Difference between wage earning capacity of workman before and after injury held immaterial where recovery was not had under such section (Rev. St. 1925, art. 8306, § 11).**

Where recovery under Workmen's Compensation Act for foot injury was not had under Rev. St. 1925, art. 8306, § 11, difference between claimant's wage-earning capacity before and after injury, which is made measure of compensation under that section, becomes immaterial.

**7. Master and servant ☞417(9)—Judgment awarding compensation to injured workman should incorporate provision for retention of jurisdiction to modify award for change of condition, mistake, or fraud (Rev. St. 1925, art. 8306, § 12d).**

Judgment awarding compensation to injured workman should have incorporated provision for retention of jurisdiction to review or modify award on proof of change of condition, mistake, or fraud, agreeably to practice prescribed by Rev. St. 1925, art. 8306, § 12d, though such procedure is not imperative and court would have such authority anyway.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by the Petroleum Casualty Company, insurer, to set aside an award of compensation under the Workmen's Compensation Act to A. Seale, employee of the Humble Company. From a judgment refusing to set the

---

award aside, insurer appeals. Reformed and affirmed.

J. C. Townes, Jr., R. E. Seagler, and Conrad J. Landram, all of Houston, for appellant.

Geo. G. & M. E. Clough, of Houston, for appellees.

GRAVES, J. Under a jury's verdict upon special issues finding him to have sustained 85 per cent. of "permanent partial incapacity" to labor as a result of injuries sustained in the course of his employment for the Humble Company, the appellee was awarded judgment against appellant as the insurer for 60 per cent. of his average weekly wages for 300 weeks, as in compliance with the last paragraph of section 12 of R. S. 1925, art. 8306.

Appellant, through this appeal, protests that the appellee by his pleadings and proof, confined the injury and disability thus found to be partial to his right foot, and therefore, under the "specific injury" provisions of section 12, could in no event recover for more than the total loss of the use of the foot; that is, 60 per cent. of his average weekly wages for 125 weeks. A superstructure of corollaries is thus built upon this assumed mudsill to the effect that:

(1) A series of its requested special issues designed to elicit whether partial incapacity in the use of the right foot was suffered after total incapacity therein ceased, and, if so, the per cent. and duration thereof, should have been given.

(2) That the trial court's special issue No. 2, "Do you find that the plaintiff has sustained a permanent partial incapacity?" should have submitted the extent and duration of the claimed disability separately.

(3) That the verdict and judgment fixing the disability sustained at 85 per cent. are not supported by the evidence.

The purport of additional propositions is that the evidence failed to show wage-earning capacity after the injury; hence was insufficient to support any recovery under section 11 of article 8306, and, in any event, the judgment should be so reformed as to provide for retention of jurisdiction by the court "for the purpose of reviewing or modifying the award on proof of change of condition, mistake, or fraud."

[1] None of these contentions, except the last one, we think, can be sustained. The first of them rests upon two general arguments: (1) That the appellee's pleadings and proof limited the permanent injury found to the impaired use of a specific member, his right foot, wherefore the period of his compensation could not at most exceed the 125 weeks prescribed in section 12 for the entire loss of the use of the foot; (2) that the last paragraph of that section, relative to "all other cases of partial incapacity," being in pari materia with all the preceding ones, must be construed together with them and held to re-

fer to the same thing—that is, the cases of partial incapacity in the use of a specific member—and to allow no other recoveries than those scheduled therein.

This last-stated view of the meaning of the paragraph quoted from is directly contrary to the construction put upon it by the Commission of Appeals in Texas Employers' Insurance Ass'n v. Moreno, 277 S. W. at page 84, and cannot be adopted by this court, which fully agrees with the interpretation there made.

While the only question decided in the Moreno Case was that the recovery therein, "based in part upon section 10, resulting from injuries not specified in section 12, precludes recovery under the last paragraph of section 12 for partial incapacity due to partial loss of usefulness of the arm," the court in deciding it construed all the provisions of the Compensation Act involved in the case at bar, holding that other recoveries than those scheduled for specified injuries in its preceding sections were permissible under its last one; in other words, as we understand the view taken of the statute as a whole in this respect, if there be permanent but not totally disabling capacity resulting from injuries to the foot itself, or, along with it, to other dependent bodily powers as well—that is, permanent partial incapacity from such injuries as do not amount to the total loss of the foot or of its use, it being neither severed nor left entirely useless—it is compensable under this last paragraph of section 12 at the straight 60 per cent. of the employee's average weekly wages, multiplied by the percentage of the consequent incapacity, for a weekly period not exceeding 300 weeks.

That was precisely the character of Moreno's explicitly approved recovery for the second 200 weeks (his first 200 weeks being for the time he was totally incapacitated, based upon section 10), and it was the character of all the recovery had by Seale in this cause. As was likewise the case with Moreno, Seale made no effort to recover for partial incapacity for work under section 11, and, had he done so, probably would have failed under this conclusion of the court in the former's case:

"It is not necessary for us to decide whether or not one could recover under that section and also for partial incapacity under the last paragraph of section 12. But we think they could not. We believe the latter section refers to partial loss of usefulness of the members of the body referred to in section 12, and that, with reference to such partial incapacity, including disfigurement of such members, it takes the place of section 11, which refers to partial incapacity from general causes."

[2] As concerns the claim for express limitation of the case as made for the appellee to the schedules prescribed in the other paragraphs of section 12 than the last one, we can

neither so construe the pleadings nor proof. The material averments of the petition were:

"(2) That on and about the 24th day of February, 1926, the plaintiff received an injury during the course of his employment in Harris county, Tex., that an I-beam fell upon his right foot, breaking four bones, and dislocating his toes, and seriously and permanently injuring him. That at the time of receiving said injury he was earning the sum of $4 per day, whereby he was entitled to have and receive of and from the defendant herein compensation at the rate of $13.85 per week during such time as he shall be incapacitated from labor. * * *

"(6) Plaintiff would show to the court that, as a result of the injury which he so received, he is permanently injured; that he is a laborer, dependent upon his feet in laboring; that his employment requires the use of two good and sound feet, without which he cannot obtain and retain employment as a laborer; that the bones of his feet were broken and have not properly healed or united, nor have his toes resumed a normal position, and he is advised and believes that his said injuries are permanent, and, if so, he is entitled to have and receive compensation for 401 weeks after the date of injury at the rate of $13.85 per week, or to wit, $5,540, less 8 payments $110.80, or a balance of $5,429.20. * * *

"(8) Wherefore premises considered, plaintiff prays for citation against the defendant in the terms of the law, and on final hearing hereof each and every matter and thing connected with his claim be inquired into and ascertained and adjudicated, that the extent and nature of his injury be established, his compensation fixed, and the duration thereof ascertained, and that he have judgment for the amount of his compensation in one lump, to wit, $5,429.20, together with costs. And he prays for all such other and further relief, general and special, as he might be hereunto entitled, at law or in equity, or under the provisions of the Workmen's Compensation Act, and will ever pray."

[3] This petition was not excepted to (indeed, the record fails to show any action upon the general demurrer even), and, when given the benefit of every reasonable intendment, to which it is plainly entitled, it cannot be said to so confine and limit the injury and incapacity declared upon as to make inapplicable any other than the scheduled compensation for injury to a specific member alone, prescribed in the other paragraphs of section 12 than the last one, but rather to be sufficient for a recovery under either preceding section 10 of this same article, or under the last paragraph of section '12, 'according as might be developed by the proof. So much for the pleading.

[4] When the evidence is looked to, it too seems equally sufficient to support the 85 per cent. of permanent partial incapacity recovered for; indeed, under this court's definition of those terms in the Corsey Case (Tex. Civ. App.) 216 S. W. 464, had the jury's finding been that the appellee sustained a permanent total incapacity, instead of the negative answer it did return to special issue No.

1, propounding that inquiry, it is not thought it could have properly been set aside as being unsupported.

It is true that the actual traumatism, to use the medical term for the original hurt, was only to the right foot—that is, the 300 or 400 pound iron beam that caused it fell only upon the foot, breaking four bones, etc.—but the testimony for the appellee amply established that such effect upon the foot proper, severe as it was shown to be, was not the only disabling one resulting directly from it. The foot was neither severed, nor was the entire use of it lost, but both the man himself and his physician testified that its resulting condition had been such up to the time of the trial (nearly one year subsequent to the accident) that he could not walk at all with the sole of it flat on the ground, as the normal man does, but had to walk upon the side of it altogether, wearing his shoes out always on the side; that he had all along been unable to stay long on his feet, or do any kind of heavy lifting or hard work, such as he had been doing before, his prior employment having been as a boiler maker's helper, which called for the lifting of heavy iron both on and above the ground, and required for its proper performance the possession of two sound feet; that he had continuously suffered pain, especially in the region of the broken bones, could stand no pressure upon that foot, and had never been able to resume his work as a laborer. He added that the only work he had done since his injury was piddling around in the lighter tasks of a grocery store for a few months, but was discharged for inability to do that.

His physician further detailed at length the nature, extent, and effect of his injuries, saying that he found one of the bones so broken in his foot still not united; muscles, tendons, and nerves in the region of the fracture also injuriously affected; that, in the eleven months intervening since the accident, there had been no improvement in these conditions, and that in his opinion they were not only permanent and would never improve, but would always in their impairment of his strength and general efficiency cause him pain and make it impossible for the appellee to do any sort of heavy work as a laboring man; that his foot would never support or bear the weight of his body.

The appellee made profert of himself and of his foot and shoe in the court, in illustration before the jury of his testimony, and was also in its presence examined separately by the physician just referred to, as well as by one of the physicians who testified in behalf of the appellant; each of these medical witnesses also illustrating his findings and opinions either by reference to the injured foot, or to charts or X-ray pictures.

[5] It seems needless to further particularize testimony that so clearly appears to us to

have warranted the finding made; it is true no witness specified a per cent. in figures of resulting incapacity, but that was not essential. "Presumably the jury were men of ordinary intelligence, and as such were entitled to use their common sense upon all the evidence and draw the same conclusions from their observance of physical conditions, personal appearance, and the value of human testimony, as other rational persons in like circumstances might do." Oilmen's Reciprocal Ass'n v. Harris (Tex. Civ. App.) 293 S. W. at page 582, col. 2. They could therefore properly make their own estimate of the percentage of impairment.

We think the pleadings and evidence thus outlined definitely and plainly take this case out of the class of "specific injuries" scheduled in section 12, where appellant contends it alone should go, and bring it squarely within the "other cases of partial incapacity," as classified by the Commission of Appeals in the Moreno Case, supra, and for which the maximum period of 300 weeks' compensation is prescribed in the last paragraph of that section, agreeably to the principle thus stated in Lumbermen's Reciprocal Ass'n v. Anders (Tex. Civ. App.) 292 S. W. at page 267:

"We cannot agree with counsel for appellant in this contention, and think that section 12 of article 8306 does not govern the injury in this case. It is true that appellee has lost the use of his foot, but it is not true that the loss of the use of that member is the only injury that appellee has received. In consequence of the breaking of his leg and its failure to unite, and the constant pain and suffering that appellee has endured, and continues to endure, he has been rendered totally unable to perform manual labor, and it is probable, as we think, that this condition will continue unless appellee's leg is successfully amputated, thereby relieving him of the constant pain and suffering that he now endures in consequence of the condition of his leg. We know of no provision in the law that requires an employee to have his leg amputated in a case of this character, or otherwise be confined to a recovery of compensation as for the loss of the use of a specific member, as provided in section 12, supra. It is not only the loss of the use of the foot that has resulted to appellee, but on account of the nature of the injury to his leg and the conditions that have set up in consequence of the injury, his pain and suffering is such that he cannot endure to perform manual labor which, as the record shows, he is only qualified to perform."

The Supreme Court refused a writ of error in that case, and to the same effect with it in the construction of the statute and the principle involved are Texas Employers' Ins. Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84, and Millers' Indemnity Underwriters v. Cahal (Tex. Civ. App.) 257 S. W. 957. Further citations are deemed unnecessary.

Were appellant's first and basic position regarded as sound, it might be conceded that its purely subsidiary ones concerning the special issues asked, etc., were also, but, under our adverse conclusion upon it, the dependent ones fall along with it; hence independent discussion of them becomes unnecessary.

[6] Since no recovery was had under section 11 of the Act (Rev. St. 1925, art. 8306), the difference between appellee's wage-earning capacity before and after the injury, made the measure of compensation under that section, becomes immaterial.

[7] We conclude to sustain the sixteenth proposition, urging that there should have been incorporated in the judgment a provision for retention by the court of jurisdiction over the cause "for the purpose of reviewing or modifying the award on proof of change of condition, mistake, or fraud," agreeably to the practice prescribed for the Accident Board under section 12d of article 8306. We incline to the opinion, however, that this procedure is not an imperative one, and that the court, with the statute standing there, would in the future have that authority anyway, but perhaps it is the safer practice. It has been followed by the Court of Civil Appeals for the Ninth District in the cases of Western Indemnity Co. v. Corder, 249 S. W. 316, and Texas Employers' Insurance Ass'n v. Mullican, 261 S. W. 215.

The trial court's judgment, after being so reformed as to include that provision, has been affirmed.

Reformed and affirmed.