## SOUTHERN SURETY CO. v. SHOEMAKE. (No. 7292.)

Court of Civil Appeals of Texas. Austin. Jan. 30, 1929.

Rehearing Denied Feb. 20, 1929.

N. C. Walker, of San Saba, for appellee.
James A. King, of Austin, amicus curiæ.

BAUGH, J. This is an appeal from a judgment of the district court of San Saba county on special issue findings of a jury in favor of Shoemake in a suit brought by the Southern Surety Company to set aside an award of the Industrial Accident Board. Appellant issued an insurance policy under the Workmen's Compensation Act to J. R. Horn & Sons, who were constructing a hotel building in San Saba. Tex. The appellee was hauling gravel to be used in such construction, when he was severely injured by a cave-in at the gravel pit from which he was hauling, while loading his truck. Though its brief raises several questions, on oral argument appellant's attorney admitted that only one question is involved; that is: Was Shoemake, at the time of his injury, an "employe" of Horn & Sons, within the meaning of the Workmen's Compensation Act? Appellant contends that he was an independent contractor. This question was submitted to the jury under an instruction tendered by appellant as to what is meant by the word "employe," and they found that Shoemake was such employee at the time.

█ █ Unless the evidence shows conclusively as a matter of law that Shoemake was an independent contractor, the issue was a jury question. Trachtenberg v. Castillo (Tex. Civ. App.) 257 S. W. 657; Maryland Casualty Co. v. Scruggs (Tex. Civ. App.) 277 S. W. 768; Ætna Life Ins. Co. v. Casper (Tex. Civ. App.) 11 S.W.(2d) 594; 31 C. J. 474. And if entitled to go to the jury, like any other issue of fact, we must consider the evidence in its most favorable light in support of the verdict.

The Compensation Act (article 8309, R. S. 1925) defines "employe" as follows: "'Employe' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

The charge tendered by appellant and submitted by the trial court to the jury defined the term as including, "Any person in the service of another, under any contract of hire, whether express or implied, oral or written, where such other retains the right to prescribe the means and method of performing the labor, and to control the material details of same, when to be done by such employee."

█ █ In determining whether the relationship is that of employee, the courts have usually reached their conclusions by determining that such relationship is not that of independ-

McGregor & McGregor, of Austin, J. H. Baker, of San Saba, and A. L. Love, of Austin, for appellant.

ent contractor. Volumes have been written on the question, and cases almost without number could be cited discussing it. We refer for exhaustive consideration of this question to the annotations in 19 A. L. R. 215 to 275, and 1168 to 1361, and 20 A. L. R. 684 to 809. The general principles in determining the relationship are fairly well settled, but their application must depend upon the facts of each particular case. Maryland Casualty Co. v. Scruggs, supra. The test in determining the relationship is variously expressed, but, as stated in the court's charge, now appears to be whether or not the employer reserved to himself the right to control the one employed in the material details of the employment. It need not extend to the minutest or unimportant details, as some of the earlier decisions might indicate. Nor is it essential that the employer exercise such right by actual interference with or regulation of such details of the work. Whether he retained the right of such control is what constitutes the test. King v. Galloway (Tex. Com. App.) 284 S. W. 944; Corrigon, Lee & Halpin v. Heubler (Tex. Civ. App.) 167 S. W. 161; 19 A. L. R. 240; 31 C. J. 475.

In the case of Shannon v. Western Ind. Co. (Tex. Com. App.) 257 S. W. 522, cited by both appellant and appellee, and largely relied upon by appellant to sustain its contention, the Commission of Appeals discusses at considerable length the question here raised, and outlines the following elements in that case as supporting their holding that Shannon was an independent contractor:

(1) That the work undertaken required special skill.

(2) That the person employed was to produce certain results according to his own means and methods and to employ his own help.

(3) That he was to furnish a part or all of the materials or appliances for doing the work.

(4) That he was engaged in a distinct and recognized employment, and was to be paid either a gross sum of money or with reference to a quantitative standard.

(5) That he was a free agent as to his hours of labor and under no obligation to work exclusively for his employer.

■ It seems to be well settled, however, that no one particular consideration, taken alone, is conclusively determinative of the character of the relationship. In the instant case, viewing the evidence most favorably to the appellee and discarding that of appellant, wherein there was any conflict, the following facts were shown or deducible from the evidence: That Horn & Sons had contracted to erect a hotel in the town of San Saba; that in running a concrete foundation they were using gravel from as many as three gravel pits in the near vicinity of the town, such gravel pits having been approved by the architect as affording proper gravel; that gravel was being hauled by different parties, who owned their trucks, and some by a truck belonging to Horn & Sons, driven by one of their employees; that about November 21, 1927, Shoemake went to E. H. Horn, who appears to have had charge of the construction, and asked for a gravel-hauling job; that Horn then told him to hang around a day or two, as he thought one of his gravel haulers was going to quit; that on the afternoon of November 22, Buck Roberts, one of the gravel haulers, did quit, went with appellee to Horn's office, and notified him to that effect; that Horn thereupon told appellee that he wanted him to go to work at once; that the job would last from 10 to 15 days, and that he would pay appellee $1.50 per yard for hauling; that appellee then built a dump bed for his truck and reported to Horn ready for work on November 23; that Horn then told him to haul from the Allison pit; that Horn furnished him shovels, at appellee's request, to load his truck; that appellee employed his own labor to assist him in loading and unloading his truck; that Horn had no one at the gravel pit to direct or supervise the loading; that, when the gravel reached the hotel site, Horn or his agent inspected it, directed appellee where to unload it, and issued him a ticket entitling him to be paid for the quantity hauled. Shoemake had hauled only a few loads when his injury occurred. No fixed amount of gravel was ever agreed upon to be hauled by appellee, no specified time was fixed in which he was to work, and nothing said as to when he should stop hauling.

Appellant earnestly insists that this case is ruled by the Shannon Case, supra, contending that the fact that Shoemake owned his own truck, furnished his own labor, worked on his own time, and was paid only on a quantitative basis, conclusively makes him an independent contractor as a matter of law. It insists that Horn & Sons were interested only in the results of the labor, and had nothing to do with directing the details of its performance.

■ The evidence in this case presents a close question, and one in which, generally speaking, appellant is correct. But, as above stated, each case must be determined by its own facts. And in determining the relation of independent contractor in its broad sense, and as generally used, two elements in particular are almost, if not, always present: (1) The result sought to be accomplished requires an element of skill not possessed by the common manual laborer; and (2) the term "results" to be accomplished is usually applied in the sense of a production or product of some kind, and not the rendition of a service. United States Fidelity & Guaranty Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; King v. Galloway (Tex. Com. App.) 284 S. W. 942. As stated in the Shannon Case: "The man-

ner in which the person employed is to be compensated standing alone is seldom more than of minor importance." Nor is the fact that the one employed uses his own discretion as to his hours of labor, is to be paid with reference to a quantitative standard, and furnishes some of his appliances, conclusive that he is an independent contractor. King v. Galloway, supra; Maryland Casualty Co. v. Kent (Tex. Com. App.) 3 S.W.(2d) 415 (both written by the Commission of Appeals subsequent to the decision in the Shannon Case). Certainly the hauling of gravel, loaded with shovels could not be classed as requiring special skill. Nor could gravel delivered in its original state as taken from the earth be said to be a finished product by the use of skill.

We think, also, that under the evidence the jury could conclude that Horn reserved the right to discharge Shoemake whenever he chose, regardless of how much gravel he had hauled. No fixed amount was agreed upon, nor was any definite time to cease hauling set. The unrestricted right of the employer to end the service whenever he chooses, without regard to the final result of the work itself, is a very strong, and sometimes conclusive, circumstance indicating a relationship of employee, instead of that of independent contractor. Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 932. These elements, together with the testimony that Horn directed Shoemake where to get the gravel, what kind he should haul, and where he should unload it, raised an issue of fact, we think, as to whether he was an employee, and not an independent contractor as a matter of law, and authorized the jury to find that Horn at least reserved the right to control the services of appellee in their material details, whether he in fact exercised such right or not.

Under such circumstances we are not prepared to hold that this issue was improperly submitted to the jury, nor to overturn their findings thereon. The judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant complains, among other things, of our statement that its counsel admitted in oral argument that only one question was involved in the appeal. Such was the express admission of counsel in appellant's closing argument, but, since his co-counsel did discuss other issues raised in its brief, we will, in overruling them, here discuss them briefly.

In its third and fourth propositions appellant contends that there was no evidence authorizing the submission to the jury of special issue No. 2; that is, as to what was the average daily wage or salary of an employee of the same class as appellee, working substantially the whole of the year next preceding the injury. No complaint is made of the amount found, but merely that there was no evidence authorizing the submission of the issue. We overrule this assignment. Three witnesses testified that all during the year preceding appellee's injury they had had gravel, sand, cotton seed, and other commodities hauled over the same roads in trucks, for which they had paid on a quantitative basis. One witness testified, "I had men hauling gravel on these roads most of the time." Clearly such testimony was sufficient to authorize the submission of the issue complained of.

Appellant's fifth and sixth propositions complain of the submission to the jury of special issues relating to the extent of appellee's incapacity to work, and how long same would continue, on the ground that there was no competent evidence fixing with any degree of certainty either the extent of his incapacity or how long it would continue, and that the jury, under the evidence before them, could only surmise how long total incapacity would continue, when partial incapacity would begin, and how long and to what extent that would continue. There is no merit in this. The jury had the appellee before them, with his detailed testimony as to the character, extent, and effect upon his body of the injuries sustained. They had also X-ray pictures of his injuries and the testimony of two physicians. His condition from the date of his injury up to the date of the trial was established—total incapacity. As to the future, of course, neither appellee nor the physicians could testify with certainty as to what his condition would be. At best, their testimony, even as experts, could be only their opinion as to that. But with the physical facts before them, aided by the testimony of the physicians, and their own experience as reasonable and intelligent men, they were qualified to arrive at competent conclusions as to both the extent and length of time appellee's incapacity would likely continue, and their finding thereon is supported by sufficient evidence. Texas Employers' Ins. Ass'n v. Shilling (Tex. Com. App.) 289 S. W. 998; Oil Men's Reciprocal Ass'n v. Harris (Tex. Civ. App.) 293 S. W. 580; Petroleum Casualty Co. v. Seale (Tex. Civ. App.) 4 S.W.(2d) 90.

Appellant's motion is therefore overruled. Overruled.