**TRADERS & GENERAL INS. CO. v. SNOW.**
No. 3645.

Court of Civil Appeals of Texas. El Paso.
March 10, 1938.

Rehearing Denied March 24, 1938.

683

**684**

Lightfoot, Robertson & Gano, of Fort Worth, and Hudson & Hudson, of Pecos (Dan P. Johnston, of Dallas, and E. B. Robertson, of Fort Worth, of counsel), for appellant.

J. B. Cotten and John J. Watts, both of Crane, for appellee.

NEALON, Chief Justice.

C. A. Snow, appellee herein, brought suit against Traders & General Insurance Company, appellant herein, in the district court of Crane county, Tex., to recover compensation under the Workmen's Compensation Act, Rev.St.1925, art. 8306 et seq. as amended, Vernon's Ann.Civ.St. art. 8306 et seq. Appellant was insurance carrier for L. R. Simmons, of Crane county. Appellee alleged that on or about May 30, 1936, while in the discharge of his regular duties as an employee of the said L. R. Simmons, he was suddenly, accidentally, and unexpectedly injured; that as a direct and proximate result of said injuries he was totally and permanently disabled with reference to performing labor and earning money. The case was submitted upon special issues, in response to which the jury found that the plaintiff sustained an accidental personal injury in the course of his employment while working for L. R. Simmons; that he sustained total incapacity for a period of 160 weeks from the date of said injury, and that he sustain-

ed partial incapacity as a result of said injury for a period of 241 weeks; that said partial incapacity is permanent; that the difference between the average weekly wage of the plaintiff prior to May 30, 1936, the date of the injury, and the plaintiff's average weekly earning capacity during the existence of partial incapacity is $10 per week; that the percentage of partial incapacity is 50 per cent.; that the employer received notice of the injury within 30 days after its happening; that plaintiff did not work in the employment in which he was working at the time of his injury for substantially a year preceding the date of said injury; that no employee of the same class as plaintiff worked substantially the whole of the year immediately preceding May 30, 1936, in the same or in a similar employment in the same or a neighboring place; that the average daily wage of plaintiff deemed just and fair to both plaintiff and defendant was $5 per day; that plaintiff's incapacity for work was not due solely to previous injuries received by him, nor have they contributed to his incapacity, nor will they contribute to his incapacity to work in the future; that the percentage of incapacity to work suffered by plaintiff as a result of the injury of May 30, 1936, had there been no injury of August 31, 1934, would have been 100 per cent.; that plaintiff's incapacity to work was not the sole result of tuberculosis. While the evidence was sharply conflicting on several issues, it was sufficient to justify the answers returned by the jury.

On the verdict the court entered judgment that appellee recover from defendant $692 in a lump sum, being the amount of past-due installments, as found by the court, and that he recover interest thereon at the rate of 6 per cent. per annum; that plaintiff further recover interest on all past-due installments from the date of their respective maturities at the rate of 6 per cent. per annum, as they should become due and payable by the terms of the judgment; that the appellee recover of appellant the sum of $2,028, payable at the rate of $17.30 per week, beginning March 24, 1937, payable weekly each succeeding Wednesday thereafter until the full amount thereof should be fully paid and satisfied; that appellee recover of appellant the sum of $1,446, payable at the rate of $6 per week beginning August 17, 1939, and further providing for payment of one-third of the recovery, as collected, to J. B. Cotten, attorney for appellee, payable as set out in the judgment. From this judgment appellant appealed.

### Opinion.

Appellant urges twenty-two assignments of error. By the first, third, eighth, tenth, eleventh, twelfth, and thirteenth assignments appellant complains of so much of the judgment as allows plaintiff to recover for 160 weeks' total incapacity, upon the ground that there was no finding by the jury as to when the alleged total incapacity began or ended, and no submission or request for submission of such an issue. The second, fifth, seventh, ninth, tenth, eleventh, twelfth, and twenty-first assignments complain of the action of the court in finding that the partial incapacity began when the total incapacity terminated, upon the ground that there is no jury finding to warrant this finding by the court, and that the jury failed to answer a question submitted as to the date when the partial incapacity began. The form in which the question of total incapacity was submitted was as follows: "How long do you find from a preponderance of the evidence that the total incapacity, if any, of the plaintiff, C. A. Snow, continued, if it did, or will continue, if it will, from the date of said injury, if any was sustained?"

Upon sufficient evidence, the jury answered "160 weeks." Construing question and answer together and in connection with the finding that the injury was sustained on or about May 30, 1936, we have a finding that the total incapacity began May 30, 1936, that being the day of the injury as fixed by appellee's testimony, and the issue being so framed as to inquire how long the injury continued "from" May 30, 1936, if it did continue from said date. While issue No. 7 might have been submitted with greater directness by resorting to language similar to that used in Traders & General Insurance Company v. Ross, Tex.Civ.App., 88 S.W.2d 543, yet an analysis of the interrogatory demonstrates that it was left to the jury to determine whether or not any total incapacity began on May 30, 1936, and the length of time thereafter it continued, if it began on or about said date. It does not appear from appellant's brief that it formulated and requested any clarifying special issue or instruction in this connection. Therefore, the enumerated assignments complaining of the court's action in calculating the payments for total incapacity

from May 30, 1936, are overruled, as is, likewise, the twenty-second assignment. The challenge therein directed at special issue No. 7 is covered by the foregoing discussion.

Nor is there any merit in the contention that, because the jury fixed no date for the beginning of the partial incapacity, the court erred in entering judgment that payments predicated upon the finding of partial incapacity begin at the termination of the 160 weeks that the jury determined was and would be the duration of the total incapacity. The jury having found that the total incapacity would continue 160 weeks from May 30, 1936, and that the partial incapacity was permanent, for reasons hereinafter stated, there is a presumed finding that the partial incapacity began immediately upon the cessation of the total incapacity. The issue as to the date at which partial incapacity began in this case is not a controlling issue, but a supplemental or incidental one— what Justice McClendon, in Panhandle & S. F. R. Co. v. Friend, Tex.Civ.App., 91 S.W.2d 922, 930, referred to as one of the "component elements of such grounds," meaning independent grounds of recovery or defense. In the absence of a finding thereon, the court was authorized to make such finding, and is presumed to have done so, if the evidence justified it, and it was necessary in support of the judgment; provided, of course, appellant did not request the submission of such an issue or the issue was submitted and not answered. An inquiry as to the date the partial incapacity commenced was submitted conditionally in issue 9–A, the condition being that it was to be answered only in the event the jury returned a negative answer to special issue No. 9, which asked if the partial incapacity, if any, was permanent. The jury answered issue No. 9 affirmatively, and, obedient to the court's instruction, returned no answer to issue No. 9–A. Appellant did not object to this manner of submission or request that the issue be submitted differently. It was upon notice of the limitations within which the jury was to consider the issue, yet elected to remain silent. By this silence it acquiesced in the manner of submission, and in effect consented that the issue, in the event an affirmative answer were returned to issue No. 9, should be determined by the court. As further said in Panhandle & S. F. Railway Co. v. Friend, supra:

"Where, however, the ground is submitted, however erroneously or incompletely, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will form the basis of the court's judgment thereafter to be rendered thereon. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them. Nor is this an undue burden. It is as much the duty of defendant as of plaintiff (and vice versa) to know the law applicable to the issues which are submitted as the basis of a judgment which will impose a liability against him, if the findings thereon are adverse to him. For reasons which the Legislature deemed salutary, the law requires him to make his objections at a time when the error or omission can be cured, and the expense and delay incident to reversal thereby avoided. It should also be remembered, in this connection, that not alone the litigants are vitally interested in the expense of litigation. They bear only a portion of this expense. A large part is borne by the state or county. Especially is this true in jury trials, wherein the litigant pays only $5 per case, and the county has to pay at the rate of $36 per day, regardless of the number or duration of trials."

As pointed out by the learned author of the cited opinion, the requirement that the litigant shall make his objection in the trial court deprives him of no substantial right. It merely ends a practice, which, in the minds of zealous protagonists of improved procedure, was "more honour'd in the breach than in the observance." The enumerated assignments complaining of this action of the court, as well as the fourth, sixth, and eleventh assignments, which assert that the findings as to total and partial incapacity are conflicting, are overruled, as is the seventeenth assignment. Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805; Fidelity & Casualty Co. v. Branton, Tex. Civ.App., 70 S.W.2d 780.

Assignments complaining of the submission of the issue of partial incapacity upon the ground that only total incapacity was alleged are overruled. The allegation of the greater injury permits recovery for the lesser. Commercial Casualty Ins. Co. v. Strawn, supra; Southern Underwriters v. Wolcott, Tex.Civ.App., 110 S. W.2d 251, application for writ of error dismissed.

By its tenth and eleventh propositions, submitted as germane to fifteenth and sixteenth assignments of error, appellant complains of the manner in which the issue of partial incapacity was submitted. The interrogatories to which objection is made are in the identical language that this court held to be proper in Traders & General Insurance Co. v. Herndon, Tex.Civ.App., 95 S.W.2d 540, writ dismissed. See, also, Southern Underwriters v. Sanders, Tex. Civ.App., 110 S.W.2d 1258. The assignments are overruled.

The seventeenth and eighteenth assignments complaining of the language in which the court submitted the issues necessary to be determined in order to ascertain the governing wage rate are overruled. They were submitted in the following language:

"Do you find from a preponderance of the evidence that plaintiff, C. A. Snow, did not work in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the date of said injury, if any, was sustained on or about May 30, 1936? You will answer this issue by answering: 'He did not' or 'He did' as you find the facts to be."

"Do you find from a preponderance of the evidence that there was not an employee of the same class as the plaintiff who worked substantially the whole of the year immediately preceding the 30th day of May, 1936, in the same or in a similar employment in the same or neighboring place in which plaintiff was working on May 30, 1936? You will answer this issue by answering: 'There was not' or 'There was' as you find the facts to be."

■ The objection is made that the issues are submitted negatively rather than affirmatively, that each is multifarious and duplicitous, and that the evidence is insufficient to support the submission of either issue. We will dispose of the objections in their inverse order. The evidence was sufficient to support the findings. Before plaintiff was entitled to a submission of the question of "average weekly wage" under first subsection 3 of section 1, of article 8309, Revised Civil Statutes, it was necessary for him to negative the existence of conditions that would bring his case within the provisions of first subsections 1 and 2. As to subsection 1, his own testimony was sufficient, and the same is true of the testimony of Hatley and Carpenter respecting the conditions provided for in subsection 2.

■ The interrogatories were not multifarious. Each submitted but one ultimate issue of fact.

■ The objection that they were erroneous because calling for negative findings has been (in principle) heretofore answered by the Supreme Court in Southern Ice & Utilities Co. v. Richardson, Tex.Com.App., 95 S.W.2d 956, at page 958, in which Judge Taylor of the Commission of Appeals, in an opinion adopted by the Supreme Court, in passing upon the form of the submission of the issue of unavoidable accident, suggested a formula which justifies that used by the trial court in this case. We quote sufficient of that opinion to show how the issue arose and the pertinency of the holding to the issue there involved:

"Complaint is made by the company in another assignment of error of both the definition of the term 'unavoidable accident' and the form of the submission of the special issue to the jury. It is not necessary in view of another trial to discuss the holding of the Court of Civil Appeals in this connection. We merely suggest that it will be more helpful to the jury upon another trial for the court to define the term substantially as 'an event which occurs without the negligence of the plaintiffs or the defendant;' and that the form of the issue be, in effect, 'Do you find from a preponderance of the evidence that the collection in question was not due to an unavoidable accident?'

"It is suggested, as a further aid to the jury in avoiding confusion in answering an issue requiring consideration of a negative inquiry, that it be instructed to answer the question either, that, 'It was due to an unavoidable accident,' or, 'It was not due to an unavoidable accident,' as it may find the facts to be."

This well-considered advice intended for the guidance of the trial court in that case, approved as it was by the Supreme Court when it adopted the opinion, thus making it binding upon trial and intermediate appellate courts, may not be questioned by us. It settled the question in a practical way, affording defendants a full consideration of their rights in the premises, and aiding jurors to avoid returning answers contradicting what they

believed the facts to be, and protecting the public from the expense of new trials not necessary to the actual protection of private rights.

By its fourteenth assignment of error appellant challenges the judgment of the trial court in awarding plaintiff $6 per week for 241 weeks of partial incapacity. The award was based upon the finding of the jury that the difference between the average weekly wage of the plaintiff prior to the injury, and his average weekly earning capacity during the continuance of partial incapacity, would be $10 per week. Appellant charges that there is neither pleading nor evidence to authorize or support such a finding of the jury. The assignment is overruled. The issue as to the adequacy of the pleading has hereinbefore been determined. The evidence indicates that the plaintiff's ability to earn is limited by his capacity for physical labor. Dr. Brown, giving his opinion based upon knowledge acquired through the making and interpreting of an X-ray picture, stated that a man suffering the character of injury received by plaintiff could not do the lifting ordinarily required in the performance of manual labor. He thought the injury would be permanent. If his opinion was correct, the plaintiff's entire earning capacity was practically destroyed. Dr. Johnson, witness for defendant, testified that a man receiving a fracture of the fifth lumbar vertebra, which Dr. Brown testified was the injury received by plaintiff, would suffer great pain and discomfort in walking around immediately after receiving the injury, and that he did not think the average man would work after receiving it unless there were some impelling force to make him do it. The plaintiff testified in the presence of the jury. Its members had an opportunity to observe his appearance at the time of trial, and were entitled to draw their own conclusions from such observation and the evidence adduced as to plaintiff's then condition and the prospects of his recovery or improvement. The 160-week period had not yet elapsed. The jury had heard the evidence as to the plaintiff's earnings in the past and the responsibility was upon the jurors to determine what it would probably be in the future, if it were not wholly destroyed. It was not necessary that any witness specify a percentage in figures of the incapacity resulting from the injury. The jury could make its own estimate of the percentage of impairment. Petroleum Casualty Co. v. Seale, Tex.Civ.App., 4 S.W.2d 90; Oilmen's Reciprocal Ass'n v. Harris, Tex.Civ.App., 293 S.W. 580; Texas Employers' Ins. Ass'n v. Shilling, Tex.Civ.App., 279 S.W. 865; Southern Surety Co. v. Shoemake, Tex.Civ.App., 16 S.W.2d 950; Traders & General Ins. Co. v. Hicks, Tex.Civ.App., 94 S.W.2d 824.

In response to special issue No. 4, the jury found that plaintiff sustained total incapacity as a natural result of his injury, and by special issue No. 8 that he sustained partial incapacity. Appellant insists that these are conflicting findings. Construing the verdict as a whole, we are of the contrary opinion, and hold, that there was no conflict.

Appellant insists that the court erred in using the finding of the jury that $5 per day was an average daily wage rate just and fair to both parties as a basis for calculating the plaintiff's wage rate, and then multiplying the said daily wage rate by 300 and dividing by 52, upon the theory that under the uncontroverted evidence plaintiff was working at the rate of $5 per day when injured, and under no circumstances could he have obtained the same character of employment for more than 200 days out of the year. The objection is without merit. As was said by the Commission of Appeals in Traders & General Insurance Company v. Bulis, 104 S.W.2d 488, 490: "A reading of this subdivision will disclose that it is very general in its provisions as to what shall be taken into consideration by the board in computing the average weekly wage thereunder. It simply provides that the average weekly wage thereunder 'shall be computed by the Board in any manner which may seem just and fair to both parties.' Under such provision no hard and fast rule can be announced that will govern the board in all instances. The statute clearly intends to clothe the board with broad discretionary powers in considering matters that bear on the question to be determined. The board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier."

According to plaintiff, he was making $5 a day at the time he received his injury.

He had been working in that position only 7 or 8 days when he received his injury, but he had engaged in other work prior to his employment by the insured. He had drawn wages in various amounts and from various employers. From one he received 40 cents per hour for an 8-hour day. This employment lasted 25 days. From the General Crude Oil Company he received $5.20 per day for a period of 60 days; from another employer he received 70 cents an hour and worked 8 hours a day; from another he received $9.75 for a working day of 8 hours; from another only $3.84 per day. In arriving at the compensation to be awarded, great latitude is allowed. Lumbermen's Reciprocal Ass'n v. Warner, Tex.Com.App., 245 S.W. 664. We cannot say, therefore, that there was not sufficient evidence to justify the jury in finding that $5 was an average daily wage rate just and fair to both parties. The matter to be determined is, not what was the average wage earned by the plaintiff at any particular time in the past, but what his average "earning capacity" was and would be.

Appellee's incapacity not being both total and permanent, the court did not err in denying plaintiff a lump sum award, article 8306, § 15, R.C.S.1925, and there is, therefore, no merit in appellee's cross-assignment of error.

All of appellant's assignments of error and appellee's cross-assignment of error are overruled.

In conformity with the views herein expressed, the judgment of the trial court is affirmed.