## FIDELITY UNION CASUALTY CO. v. ARNOLD.

No. 1429—6063.

Commission of Appeals of Texas, Section B. May 31, 1933.

W. J. Townsend, of Lufkin, and Collins & Houston and V. A. Collins, all of Dallas, for plaintiff in error.

Smith, West & Gladney, of Henderson, for defendant in error.

SHORT, Presiding Judge.

The following statement taken from the application for the writ of error presents the nature of the case and the issues involved:

"This suit was filed by defendant in error, plaintiff in the trial court, against plaintiff in error, defendant in the trial court, to set aside an award theretofore made by the Industrial Accident Board of Texas denying him compensation in a claim asserted before said Board by defendant in error for injuries alleged to have been received by him while in the course of his employment as an employee of Leath & Maddox, road contractors, and engaged in doing certain work on the public highways in Cherokee County, Texas. He predicated his right to recover in said suit upon the allegation that Leath & Maddox were road contractors and had procured a policy of Workmen's Compensation with plaintiff in error for the protection and benefit of their employees engaged in the work of road construction in Cherokee County, and that he was an employee of said Leath & Maddox and engaged in the course of his employment at the time he received his injury complained of and being injury to his feet from being frozen. The case was tried to a jury upon a number of special issues submitted by the court, but the court did not submit any issue as to whether or not defendant in error was an employee of Leath & Maddox. That issue was clearly made by the evidence yet there was no request for the submission of such issue nor was such issue submitted to the jury. Defendant in error claimed in his petition in the trial court compensation for total permanent incapacity and asked the court to award him a lump sum settlement. No issue was requested or submitted by the court as to what rate of discount should be applied in finding the present value of the judgment in case a lump settlement was awarded.

"Without the submission of an issue as to whether or not defendant in error was at the time of his injury an employee of Leath & Maddox and without a finding of fact as to the rate of discount that should be applied to said judgment, the trial court rendered judgment in favor of defendant in error and against plaintiff in error awarding to defendant in error compensation for total permanent incapacity and discounting same at the rate of 8% and requiring plaintiff in error to redeem its obligation in lump sum. Plaintiff in error filed a motion for new trial, one of the grounds of which was that the court was without authority to render judgment in favor of defendant in error without a finding of fact in his favor that he was an employee at the time of his injury of Leath & Maddox. The question of the court's authority to award a lump sum settlement and fix the rate of discount without a finding of the jury as to the reasonableness of the rate was not raised by plaintiff in error in its motion for new trial but was first raised in motion for rehearing in the Court of Civil Appeals. Attention of the Court of Civil Appeals was expressly called to the fact that there was no issue submitted and no finding of the jury as to whether or not defendant in error was an employee of Leath & Maddox at the time of his injury and it was urged before the Court of Civil Appeals that that was the cardinal issue in the case and that no judgment could be rendered in defendant in error's favor without a finding on such issue. This contention was overruled by the Court of Civil Appeals in its opinion rendered in this cause and on motion for rehearing the same contention was again pressed before the court and again overruled by the court's denying a rehearing in said cause. Plaintiff in error urged before the Court of Civil Appeals for the first time in its motion for rehearing that the trial court had no power or authority to fix a rate of discount without a finding of the jury. It was urged upon the Court of Civil Appeals that it was fundamental error for the trial court to fix the rate of discount and render its judgment as to lump

sum settlement based upon an arbitrary rate of discount determined by the court. The judgment as rendered by the trial court, reduced by the rate of discount allowed, was the sum of $5,312.45."

The application for the writ of error was granted by reason of the fact it is claimed that the Court of Civil Appeals in this case has held differently from the Supreme Court in the case of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Kirby Lumber Company v. Conn, 114 Tex. 104, 263 S. W. 902; Ablowich v. Greenville National Bank, 95 Tex. 429, 67 S. W. 79, 881; and from the Commission of Appeals, Section B, in Norwich Union Insurance Co. v. Chancellor, 5 S.W.(2d) 494, as well as from the case of U. S. Fidelity & Guaranty Company v. Nettles (Tex. Com. App.) 35 S.W.(2d) 1045, 1046 and Herzing v. Texas Employers' Ins. Association (Tex. Com. App.) 17 S.W.(2d) 1046.

The application for the writ of error raised only two issues. The first assignment of error alleges that the court erred in rendering judgment for the plaintiff herein, because no issue was submitted to the jury calling for a finding as to whether or not Joe Arnold was an employee of Leath & Maddox at the time of his alleged injury, and there was no finding of such fact. The second assignment of error challenges the right of the court, in the absence of an issue submitted to the jury, and a finding thereon, to discount the weekly payments and place a present value thereon, rendering the judgment for a lump sum.

▮ The plaintiff in error presents in support of the proposition submitted under the second assignment of error the opinions of the Commission of Appeals in Herzing v. Texas Employers' Ins. Association, 17 S.W. (2d) 1046, and U. S. Fidelity & Guaranty Company v. Nettles, 35 S.W.(2d) 1045, 1046, both of which held that the trial court has no authority to find a lump sum amount based upon the findings of the jury as to the amount due by weekly installments to an employee under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), in the absence of a submission of an issue and a finding thereon, as to the present value of such aggregate sum due by installment. In disposing of this assignment and the proposition thereunder, it is only necessary to refer to the fact embraced in the statement of the case made by the plaintiff in error to the effect that, while the defendant in error claimed in his petition in the trial court compensation for total permanent incapacity, and asked the court to award him a lump sum settlement, and while no issue was requested or submitted by the court as to what rate of discount should be applied in finding the present value of the judgment, in case a lump sum settlement was awarded, yet the plaintiff in error did not embrace in

his motion for rehearing, filed in the trial court, an objection to this action of the court thereby giving the trial judge an opportunity to correct the error, but for the first time only urged this error before the Court of Civil Appeals in its motion for rehearing, and claimed that the trial court had no authority to fix a rate of discount without a finding of the jury. Such being the situation, the plaintiff in error waived its right to urge this error for the first time in the Court of Civil Appeals, as a reason for reversing the judgment of the trial court, the Court of Civil Appeals having concluded there was no fundamental error committed. We therefore overrule this assignment of error.

In discussing the first assignment of error, and its proposition submitted thereunder, it is necessary to quote somewhat at length from the pleadings. Among other things the defendant in error, Joe Arnold, in his first amended original petition declares:

"That heretofore on, to-wit: October 1, 1930, the Industrial Accident Board of the State of Texas made and entered its final ruling and decision in the matter of Joe Arnold, employee, vs. Leath & Maddox, employer, wherein said Fidelity Union Casualty Company, insurance carrier, defendant herein, was held not liable or bound to pay said employee anything by reason of the alleged fact that said Joe Arnold was not employed by said Leath & Maddox, but was employed by L. D. Arnold, (who is one and the same person as Jack Arnold, hereinafter mentioned), an independent contractor. * * * That plaintiff was on January 17, 1930, and prior thereto, under a contract of hire with the said Leath & Maddox, and at said time was employed by and in the employment of said firm; that on January 17, 1930, and prior thereto, plaintiff, as such employee, was subject to, within the terms and contemplation of, and entitled to the benefits of the Workmen's Compensation Act, and was covered by the said policy of insurance on the date of the injury by him sustained, hereinafter mentioned; that on the date of said injury plaintiff was engaged in working upon a highway in Cherokee County, Texas, for the construction of which the said Leath & Maddox had entered into a contract with the State of Texas through the Highway Department thereof; that on the date of said injury and prior thereto the said Leath & Maddox had in their employment one Jack Arnold (one and the same person as L. D. Arnold), who was under a contract of employment with the said Leath & Maddox, under the terms of which said latter contract the said Jack Arnold was required to perform, as an employee of said Leath & Maddox, certain services in connection with the construction of said highway; that the said Jack Arnold during said times was financially irresponsible; that the said Jack Arnold, by virtue of the said contract,

was not engaged in an independent calling but was engaged in unskilled labor; that the said Jack Arnold, in the performance of said services, was under the direct supervision and control of said Leath & Maddox as to the manner of performing said services, and that the said Leath & Maddox both had and exercised the right to supervise, direct and control the said Jack Arnold in the performance of said services, as to all the material details thereof; that plaintiff was employed and paid by the said Jack Arnold, as the employee of said Leath & Maddox; that plaintiff was on January 17, 1930, and prior thereto, under the contract and supervision of the said Jack Arnold and other foremen and supervisors of the said Leath & Maddox and of the members of said firm themselves, during the course of his said employment; that plaintiff is informed and believes and, therefore, alleges that on January 17, 1930, and at all the times prior thereto mentioned herein, the relationship between the said Leath & Maddox and the said Jack Arnold and between the said Leath & Maddox and this plaintiff was that of employer and employee, within the contemplation and meaning of said terms as used in said Workmen's Compensation Act; that the contract between the said Leath & Maddox and said State Highway Department contemplated that the said Leath & Maddox would enter into contracts with various parties, to that made by and between said Leath & Maddox and the said Jack Arnold, for the performance of various services in connection with and in furtherance of the execution of said principal contract. * * * That plaintiff gave notice of said accident and injury to said Leath & Maddox and to the defendant within thirty days from the occurrence of the same; that he made claim for compensation to said Leath & Maddox and to the defendant and to the Industrial Accident Board of the State of Texas, all within six months after the occurrence of said injury, all of whom, including the defendant, have refused to pay plaintiff anything, although requested so to do.

"That upon the failure and refusal of defendant to pay to plaintiff the money to which he was and is entitled, plaintiff was compelled to present his claim to the Industrial Accident Board of the State of Texas, which he did within six months from the date of said injury; said Board, after giving due notice to all interested parties, made its final ruling, decision and award in favor of defendant and against plaintiff, wherein the defendant Fidelity Union Casualty Company, was ordered to pay nothing to plaintiff, from which ruling and decision plaintiff has appealed in this proceeding to have said ruling and decision set aside, annulled and vacated."

The first amended original answer of the plaintiff in error contained a general demurrer, a general denial, and a sworn statement that Leath & Maddox did not constitute a partnership. The supplemental petition of the defendant in error, in effect reasserted that Leath & Maddox constituted a partnership. The court in its charge to the jury submitted the case upon special issues, after having overruled a motion of the plaintiff in error to instruct the jury in its favor. Special issue No. 1, together with the court's explanation of the terms used, is as follows: "Do you find from a preponderance of the evidence that Jack Arnold was, on January 17, 1930, an employee of Leath & Maddox? An employee, as distinguished from an independent contractor, is one as to whom his employer has the right to direct and control the material details as to the mode and manner of accomplishing the work. The relationship of master and servant depends, not on exercise of control by the employer over the employee, but on the right to exercise it. On the other hand, an independent contractor is a person who, in the pursuit of an independent business or occupation, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to its material details. The true test of an independent contractor is that he renders service for others in the course of his employment, representing the will of his employer only as to the result of his work, and not as to the means and methods by which it is to be accomplished; that is, that a contractor is free from the control of his employer as to the material details in the performance of the work." To this issue the jury answered, "Yes."

The plaintiffs in error in their statement, under the proposition submitted under this assignment, among other things, said: "The first issue submitted was whether Jack Arnold was an employee of Leath & Maddox on January 17, 1930, to which the jury answered 'Yes'. No inquiry was made as to whose employee defendant in error, Joe Arnold, was. Defendant in error alleged in his petition that Leath & Maddox had in their employment one Jack Arnold, who was under contract with said Leath & Maddox by the terms of which Jack Arnold was required to perform, as an employee of said Leath & Maddox, certain services in connection with a highway contract. That Jack Arnold, by virtue of said contract was not engaged in an independent calling, but was engaged in unskilled labor; that the said Jack Arnold in the performance of said services was under the direct supervision and control of said Leath & Maddox as to the manner of performing said services, and that the said Leath & Maddox both had and exercised the right to supervise, direct and control the said Jack Arnold in the performance of said services as to all the mate-

rial details thereof; that defendant in error was employed and paid by the said Jack Arnold, as the employee of Leath & Maddox; that defendant in error was on January 17, 1930, and prior thereto, under the control and supervision of the said Jack Arnold and other foremen and supervisors of the said Leath & Maddox, and of the members of said firm themselves during the course of his employment, * * * and that Jack Arnold sustained to Leath & Maddox the relation of employee."

█ It is also claimed that there was a written contract between the partnership of Leath & Maddox upon the one hand and Jack Arnold upon the other, by the terms of which, as a matter of law, Jack Arnold was an independent contractor. It further appears, however, from the statement of facts, there was testimony which was not contradicted on this particular point—that at the time the defendant in error, Joe Arnold, was injured, as claimed by him, on the 17th day of January, 1930, this written contract had expired, and Jack Arnold was working for the partnership of Leath & Maddox as an employee only, under an oral contract. We therefore think, with the record in this condition, it could not be successfully contended that the rights of the defendant in error could be abridged by holding that Jack Arnold was an independent contractor as a matter of law, by virtue of this written instrument. Moreover, the witness for the defendant in error, R. M. Leath, after testifying that he was engaged in the contracting business as a road builder, with his partner, Maddox, testified as follows: "I have stated that during the progress of the work on the highway project mentioned by me, that Leath & Maddox had in its employ one Jack Arnold. Leath & Maddox had a contract with Jack Arnold. As to whether that contract was written or oral, I will state that we had two—the first one was written and the second one oral. On January 17, 1930, Jack Arnold was working for Leath & Maddox. He was then working under an oral contract."

There was no dispute that the injury occurred on the 17th day of January, 1930.

█ Continuing, this witness, Leath, testified for the defendant in error as follows: "In the operation of that highway project, Judge Watson supervised the work; he is a man that worked for us. He was superintendent for Leath & Maddox. Judge Watson had the right to supervise and control the details of the work on that project. As to my going ahead and stating to the court and jury what Mr. Watson's duties were, I will state that Judge Watson was general superintendent—you see we had a bunch of those sub-contractors there, and they were all working for us, and Judge was working for us, and I was not on the job, as I stated, and was running a gang down at Henderson in the field, and Judge Watson was looking after the business there, and he took orders from the engineer, and superintended the work just in a general way—he gave Jack Arnold his orders, and Joe Arnold his orders; of course, Maddox looked after the concrete work, and Judge's work was mostly superintending or looking after the dirt work. The engineer, Mr. Frazier, he was in charge—some of you may know him—he did not give anybody orders but Mr. Maddox, Judge Watson and myself; he would not give the sub-contractors his orders; he did not know them, but was looking to us—he knew them by name, but as far as orders were concerned. Leath & Maddox gave Judge Watson authority to supervise and direct all the details of the work. Leath & Maddox required of Jack Arnold the delivery of the completed project. They exercised the right to supervise the details of the work as it went along; they had to supervise it; he was under our orders. On January 17, 1930, Jack Arnold was not working on the project covered by his written contract; he was working on the same job, but if you will notice the contract calls from station to station, and he was not between those stations, but was over a mile from there. He was working at that present time under an oral contract. As to my telling the court and jury how that job was being handled that he was on, and whether it was being handled for the same pay that he had on the preceding, under the stations covered by the contract, I will state that the only things we wanted him to move on this little stretch we are talking about, and I did not hold the entire fifteen per cent. out of the profits. I do not know between what stations Jack Arnold and his men were working, but I do know that he was not between the stations covered by this contract; Judge Watson knows what stations he was working. About the same time that we entered into that contract with the State Highway Department for the construction of this highway we took out a policy of compensation insurance. I would not know it if you showed it to me; that is the first time I ever saw it; I could not swear what it is; I could not say. That is what it purports to be; that is the policy that was issued to Leath & Maddox by the Fidelity Union Casualty Company. * * * I know that one Joe Arnold, the plaintiff in this case, was an employee on that project. I know by whom he was employed; he was employed on the job with Leath & Maddox through Jack Arnold. As to whether he was employed by him and paid directly by him, I will say, Well, we furnished the money. The wages paid to Joe Arnold were part of the sum or sums on the basis of which premiums under that policy were computed."

This witness testified at great length, both on direct and cross examination, and upon the

whole we think his testimony is clearly sufficient to support the findings of the jury on this issue, as well as to show that Joe Arnold, at the time he was injured, was in the employ of the partnership of Leath & Maddox, and Leath & Maddox had a policy of insurance with the plaintiff in error, which covered the injury sustained by Joe Arnold. The Court of Civil Appeals, in its findings of fact, among other things, finds the following: "It appeared in the evidence that appellee was employed by one Jack Arnold, at the time an employee of Leath and Maddox, authorized to act and acting for them, appellee claimed. Appellants claimed to the contrary, insisting that Jack Arnold was not their employee but was, instead, an independent contractor, and as such on his own account, and not on their account, employed appellee to do the work he was engaged in doing at the time he was injured. In response to special issues submitted to them, the jury made findings as follows: · (1) That on January 17, 1930, Jack Arnold was an employee of Leath and Maddox. (2) That on said January 17, 1930, appellee sustained injury to his feet by the freezing thereof. (3) That such injury was sustained by appellee in the course of his employment. (4) That in the performance of his duties in the course of such employment, appellee was 'subjected to a greater hazard from freezing than ordinarily applied to the general public in the locality where he was then working.' (5) That the injury appellee suffered resulted 'in his total incapacity to perform labor.' (6) That such incapacity was permanent. (7) That the failure of appellant to pay in a lump sum compensation appellee was entitled to would 'work a manifest hardship and injustice' on him."

It further says in this connection: "The jury did not find, and neither of the parties requested the court to have them find, whether appellee at the time he was injured was an employee of Leath and Maddox or not."

■ It is the contention of the plaintiff in error that with the pleadings being in the condition as above portrayed, with the issues raised by the testimony as indicated by the above reference thereto, that the findings of the jury, in answer to special issue No. 1, is not that character of finding of fact, with reference to the vital facts involved in the case, that Joe Arnold was an employee of the partnership of Leath & Maddox at the time he was injured, as would authorize the trial court to assume that, in answering special issue No. 1, as the jury did, it necessarily involved a finding of fact that Joe Arnold, at the time he was injured, was an employee of said partnership, and that, such being the situation, the judgment rendered in favor of Joe Arnold against the plaintiff in error is not supported by any finding of fact to the effect that he was an employee of Leath & Maddox, and, not having been submitted, the claim that Joe Arnold was such employee, and as such was injured, had been abandoned as a matter of law, under the holding of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

We think, under the facts and circumstances as portrayed upon the trial of this case, the finding by the jury that Jack Arnold was an employee of Leath & Maddox (meaning that he was not an independent contractor) was equivalent to a finding that defendant in error, Joe Arnold, was an employee of Leath & Maddox through the authorized action of Jack Arnold in employing his brother Joe to work for Leath & Maddox, and that, having been hurt in the course of his employment, he was entitled to compensation under the other findings of fact by the jury. The testimony was undisputed that defendant in error, Joe Arnold, did in fact work on the project of Leath & Maddox, and that while so working he was injured in the manner and on the date alleged in his petition, and the jury so found, and the Court of Civil Appeals in its opinion so declares. As made by the pleadings and the testimony, the only issue of fact made upon the trial of the case was as to the relationship of Joe Arnold to this project, that is to say, whether Jack Arnold was an independent contractor, the testimony being conclusive that Joe was working on the project by virtue of his employment by his brother Jack, who was authorized to employ his brother Joe, and, if Jack Arnold was an employee of Leath & Maddox, then Joe was entitled to compensation. The case having been presented in the manner in which it was, so as to present prominently the issue of whether Jack Arnold was an independent contractor or whether he was an employee of Leath & Maddox, and the rights of Joe Arnold being dependent upon the findings of the jury upon this issue, we think under the circumstances this finding of the jury that Jack Arnold was an employee of Leath & Maddox, and therefore not an independent contractor, in the absence of a request for a finding as to whether Joe Arnold was an employee of Leath & Maddox, was tantamount to a finding that defendant in error Joe Arnold was an employee of Leath & Maddox. To hold to the contrary would be taking advantage of the court in the administration of justice in a manner that ought not to be tolerated.

In Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W. (2d) 1084, 1085, the Supreme Court, speaking through Justice Pierson, after quoting articles 2185, 2186, and 2190, declares the existence of no inconsistency with the provisions of these several articles, and then says, among other things: "In administering justice under our rules of procedure, it is necessary that issues be brought and presented to the jury in such a way as a clear and final finding by it may be had sufficient to a rendition of a judgment in the case." That opinion, then, in that case, proceeds to conclude the question under

discussion with the statement that, "when the omitted issue constitutes a complete ground of recovery, or a complete defense, a failure to request a submission of that issue waives said ground of recovery or said ground of defense. Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S. W. 902; San Antonio Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 637; Texas Drug Co. v. Cadwell (Tex. Civ. App.) 237 S. W. 968; G., H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524, 528; Texas City Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. at p. 543; Citizens' National Bank of Brownwood v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331, 337, 338 (writ of error refused)."

Construing this record historically, the defendant in error is shown to have been injured on January 17, 1930, and, within the time prescribed by the Workmen's Compensation Law, he is shown to have sought compensation from the plaintiff in error as insurer of the partnership of Leath & Maddox at the hands of the Industrial Accident Board, asserting that he had been injured in the course of his employment as an employee of Leath & Maddox, who carried insurance under the Workmen's Compensation Law with the plaintiff in error. Following this situation the plaintiff in error properly appeared before that board with data in effect asserting that this claim of the defendant in error was unfounded in law, by reason of the asserted fact that the defendant in error was working for his brother, Jack Arnold, an independent contractor, and therefore could not have been injured in the course of his employment as an employee of the partnership of Leath & Maddox, who carried insurance with the plaintiff in error. The Industrial Accident Board, after hearing the testimony on this issue, decided that the defendant in error's claim for compensation, by reason of the injuries sustained from the course of his employment, as an employee of Leath & Maddox, could not be sustained by reason of the further finding that these injuries occurred while the defendant in error was working for Jack Arnold, as an independent contractor. In other words, the same issue was presented to the Industrial Accident Board by reason of the activity of the plaintiff in error and its ability to demonstrate that the defendant in error was not an employee of Leath & Maddox, but was an employee of an independent contractor, and, after having found that the defendant in error was an employee of an independent contractor, said board necessarily reached the conclusion that the defendant in error was not an employee of Leath & Maddox.

The defendant in error appealed from this judgment of the Industrial Accident Board, and the pleadings in the district court presented the issues which the plaintiff in error had presented to the Industrial Accident Board, and the trial judge submitted to the jury these identical issues, the primal one being that embraced in the original claim made by the defendant in error to the Industrial Accident Board. The defendant in error's cause of action, upon which he rested his claim as a complete ground of recovery, is bottomed upon the Workmen's Compensation Law. That law, in effect, says, among other things, one employed by another who has been injured in the course of his employment, coming within the provisions of that law, is entitled to compensation to a certain extent from the insurance company, with whom his employer is carrying insurance. It follows from the evident primal purposes of this law that the basic ground of recovery under such circumstances must be that the claimant was an employee of his employer carrying such insurance at the time he was injured, and that the injuries occurred while in the course of his employment. It also follows that the insurance company must successfully defend against such a claim, by showing that the claimant had no such relation as an employee to his alleged employer as would enable the alleged employee to maintain his ground of recovery against the insurance company. There is no contention made in this record that defendant in error was not injured on the date alleged, or the character of it, nor perhaps the extent of it, but the chief contention made is that whatever the occasion, or the extent, or character of injuries, there was no such relation existing between him, on the one part, and the plaintiff in error upon the other, as justified any basis whatever for the claim, because the plaintiff in error says the defendant in error was injured while working for his brother, Jack Arnold, who was an independent contractor and therefore necessarily could not have been an employee of Leath & Maddox.

The form of the issue was perhaps necessarily determined by the original action of the plaintiff in error in presenting to the Industrial Accident Board its defense to the claim of the defendant in error before that board. However, the substance of the issue was necessarily based upon the Workmen's Compensation Law, since the Industrial Accident Board only acquired jurisdiction of the claim of the defendant in error by virtue of that law. Had there been no such claim filed with the Industrial Accident Board, the latter would not have had any jurisdiction over it. In Texas Employers' Insurance Association v. Brock, 36 S.W.(2d) 704, 706, this section of the commission, among other things, declared: "The authorities are quite uniform that, in construing the Workmen's Compensation Law, the purpose of the Legislature in enacting it must be given effect. That purpose, among others, is to partially compensate the injured employee for the loss of his previ-

ous ability to secure and retain employment in his capacity as a laborer."

Is it reasonable to conclude that the legal rights of the plaintiff in error were not fully protected by the court with the record being in this condition, when the jury were required to answer special issue No. 1 with the explanation given by the court in connection with the submission of that issue? Is it not reasonable to conclude, with the pleadings and the testimony being in the condition heretofore portrayed, that the jury must have understood, when it came to consider its answer to issue No. 1, that its answer to such issue necessarily embraced a declaration that the defendant in error's claim to compensation was based upon a state of facts showing that he was an employee of Leath & Maddox at the time he was injured, and that he was injured in the course of his employment as such employee? In other words, the answer to issue No. 1, with the record being in the condition it is, necessarily embraced the whole ground upon which the defendant in error based his recovery.

In the case under discussion it appears from the testimony that Jack Arnold, at the time the defendant in error was injured, was the agent of the partnership of Leath & Maddox, with authority to employ his brother, Joe Arnold, and that he did employ him, as the agent of said partnership, and that the partnership recognized the employment by accepting the services of the defendant in error and by paying him for such services. In this case the submission of the issue as to whether Jack Arnold was an employee of Leath & Maddox, or, in other words, was not an independent contractor, necessarily involves the submission of the issue as to whether defendant in error Joe Arnold was an employee of Leath & Maddox. This was the real, vital, important, and necessary issue to be determined in favor of the defendant in error before the judgment which was rendered could have found any support in the facts when the jury declared under the explanation of the court of the term "independent contractor" that Jack Arnold was not an independent contractor, and that he was an employee of Leath & Maddox. It necessarily follows that this finding of fact by the jury meant that Joe Arnold, the defendant in error, was an employee of Leath & Maddox on the 17th of January, 1930.

Litigants are entitled to a fair trial according to the rules of procedure, and the plaintiff in error was entitled to have a finding of fact as to whether the defendant in error was an employee of Leath & Maddox, and that he was injured as such employee in the course of his employment, under all the facts and circumstances. We think the plaintiff in error has had the benefit of these findings of fact in substance, considering the record as made, and that every necessary and material fact has been found in harmony with the judgment rendered.

We recommend that the judgment of the Court of Civil Appeals affirming that of the district court be affirmed.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.