## TEXAS EMPLOYERS INS. ASS'N v. REED.

### No. 5263.

Court of Civil Appeals of Texas. Amarillo.
April 7, 1941.

Rehearing Denied May 12, 1941.

860

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Johnson & Oliphant, of Dallas, for appellee.

FOLLEY, Justice.

This is a compensation suit which was tried before a jury. On February 24, 1941, we affirmed the judgment of the trial court in an opinion of that date. The appellant has filed a vigorous motion for rehearing challenging our former holdings particularly with reference to the alleged failure of the claimant to sufficiently establish coverage. No issue was submitted or requested in this connection. In our former opinion we held that coverage was established by the proof as a matter of law thereby dispensing with the necessity of a jury finding. Upon more mature deliberation we have decided we were in error in this respect. We have reached the conclusion that the testimony in this regard presented only a controverted issue of fact. Regardless of this fact, however, we think the judgment should be affirmed for reasons which shall hereinafter appear. Our former opinion is withdrawn and this opinion substituted therefor.

The parties herein shall be designated as they were in the trial court.

This compensation suit was filed by the plaintiff, J. W. Reed, by way of an appeal from an unsatisfactory award of the Industrial Accident Board. The Lone Star State Drilling Company was the employer. The Texas Employers Insurance Association was the insurer and is the defendant herein. The plaintiff was injured on June 17, 1938, while working as a "roughneck" in the oil fields in Hutchinson County, Texas. The plaintiff sought compensation for total and permanent disability and in the alternative for such compensation as the facts might justify under the law.

In order to clarify the issues hereinafter discussed, we deem it expedient to give a resume of the findings of the jury. They were substantially as follows: (1) That plaintiff sustained accidental personal injuries to the lumbar region of his back on or about June 17, 1938; (2) that he received accidental personal injuries to his head on or about June 17, 1938; (3) that no total incapacity resulted from such injury or injuries; (4) that manifest hardship and injustice will otherwise result unless a lump sum award be made; (5) that whatever incapacity plaintiff may have referable to his back is not solely the result of independent disease, whether prior or subsequent; (6) that any disability in plaintiff's back was not caused solely by arthritis; (7) that plaintiff has or will sustain partial incapacity from injury received by him June 17, 1938; (8) that the beginning date of such partial incapacity was August 25, 1938; (9) that such incapacity is not permanent; (10) that such incapacity was or will be temporary; (11) that the ending date of such partial incapacity will be May 25, 1944; (12) that some aggravation of a pre-existing back condition by a sacro-iliac strain of August, 1936, was not a contributing factor in any present incapacity referable to plaintiff's back; (13) that such incapacity referable to his back is not a periodically recurring condition which can be traced from time to time since before June 17, 1938; and (14) that plaintiff's average weekly wage earning capacity during the period of partial

incapacity is $7.50 per week. Upon this verdict the court rendered judgment allowing compensation for three hundred weeks at $19.16 per week from August 25, 1938; decreeing that plaintiff have a present recovery of $1,571.12 at the date of the judgment, the same being 82 weeks of accrued compensation, plus the interest thereon in the sum of $74.32; and for the remaining 218 weeks decreed a recovery in the sum of $19.16 per week commencing March 28, 1940. It is from this judgment the appeal is prosecuted.

The first contention of the defendant is with reference to plaintiff's alleged failure to sufficiently establish coverage. No question is presented in regard to plaintiff's pleadings in this respect or that there was any variance between his pleadings and proof. There was no issue submitted to the jury relative to coverage, no objections directed to the court's charge on account of such omission and no request made for such issue. The contention of the defendant is based upon the asserted insufficiency of the evidence to show coverage and the absence of the jury finding thereon which the appellant asserts vitiates the judgment in behalf of the plaintiff.

The plaintiff alleged that on or about the 17th day of June, 1938, he was employed by the Lone Star State Drilling Company and that his employer was a subscriber under the Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., with a policy of insurance in the defendant company. No allegations were made as to the nature of the concern for which the plaintiff worked, that is, whether it was a corporation or a partnership or an individual doing business under a trade name. The defendant did not specially except to the petition in any particular, it having filed only a general demurrer and general denial.

The gravamen of defendant's complaint in regard to the asserted insufficiency of the evidence is by reason of the alleged discrepancy between the recitals of the insurance policy and the testimony of the plaintiff and F. R. Fortney, a witness for the defendant. The insurance policy, which was introduced in evidence, showed on its face to have been issued by the defendant to the "Lone Star State Drilling Company" of Amarillo, Texas, which, under the declarations of the policy, was denominated a co-partnership composed of Bob Murphy and Guss Irvin. The plaintiff testified that at the time of his injury and for about three years prior thereto, he was working for Bob Murphy, who was doing business under the trade name of "Lone Star State Drilling Company". Fortney testified that he was working as a driller for the same concern which he denominated as the "Lone Star State Drilling Company" and which he said was owned by Bob Murphy. The defendant contends that the testimony of these two witnesses shows they were working for a separate and distinct concern from that insured by the defendant and that such condition of the testimony presents a fatal defect in the proof as to coverage or raised a controverted issue of fact, which, in the absence of a jury finding thereon, renders the judgment fundamentally erroneous.

■ We are not in accord with the defendant's contention in this respect. The policy of insurance was issued April 23, 1938, which was less than two months before the plaintiff was injured. The stipulations of the policy are sufficient to constitute a prima facie showing that at the date of its issuance the Lone Star State Drilling Company was a co-partnership composed of Bob Murphy and Guss Irvin. It is further our opinion that if the testimony of the plaintiff and of Fortney, as above indicated, is contradictory of the terms of the policy, it does not conclusively destroy the presumption of the continued existence of the partnership. 32 Tex.Jur. 504, para. 180; Heatley v. W. P. Ponder & Sons et al., Tex.Civ.App., 40 S.W.2d 951; Brannin v. Wear-Boogher Dry-Goods Co., Tex.Civ. App., 30 S.W. 572, writ denied; Federal Petroleum Co. v. Cator et al., Tex.Civ.App., 255 S.W. 783. Neither of these witnesses pretended to reveal the nature of the concern operating under the name of "Lone Star State Drilling Company" nor was there any testimony on this question other than that detailed above. The testimony reveals that the plaintiff was in the employment of such concern at the time of his injuries and had been for a period of about three years prior thereto. There is no intimation from the evidence that Bob Murphy was engaged in any other business or that he was connected with any other concern. We think it would be unreasonable to presume that Murphy would operate two concerns of the same name at the same time, he alone being the owner of one of them and a partner with Irvin in the other. The evidence further reveals that immedi-

ately after the accident the foreman in charge of the Lone Star State Drilling Company sent the plaintiff to the physicians of the defendant company for examination and treatment. He was first sent to Dr. H. G. Wallace at Borger, Texas, for first aid treatment. The next day he was sent to Dr. B. M. Bellamy of Pampa, Texas, who treated him continually over a period of several weeks. Each of these doctors testified that he was a designated physician of the defendant company, that he made his report of the plaintiff's condition to the defendant and that defendant paid for the services rendered to the plaintiff. Thereafter, at the request of the defendant and its counsel, plaintiff submitted to further examinations by other physicians of the defendant company, some of whom appeared at the trial as witnesses in its behalf.

■ Under all the above circumstances we are of the opinion that at least a controverted issue of fact was raised with reference to coverage, which presents the further question as to whether or not the trial court, in the absence of a jury finding, was empowered to resolve this issue in support of the judgment.

Much has been written upon the construction of article 2190, R.C.S., Vernon's Ann.Civ.St. art 2190, with reference to the power of a trial judge in a trial before a jury to make findings of fact where the same are not submitted or requested. It seems, however, that a great deal of confusion still exists upon the subject among the members of the bench and bar of Texas. This confusion exists in part, no doubt, because of the difficulty of precisely defining a rule applicable alike to all cases.

■ As we understand the cases of Ormsby et al. v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084, and Wichita Falls & Oklahoma Ry. Co. et al. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, the Supreme Court has interpreted the statute in question as applicable, not to an "ultimate issue" as that term is used in the Pepper case, nor to a separate and independent ground of recovery or defense, no portion of which has been submitted, but applies only to those issues which are incidental, supporting, correlated and supplemental to the ground of recovery or defense actually submitted. Each of those cases is authority for the proposition that at least portions of an independent ground of recovery or defense must be submitted to the jury or such ground of recovery or defense is waived or abandoned. This construction of the statute has been generally accepted as the rule, but most of the confusion arises not from the rule thus announced but from the difficulty of distinguishing between an independent ground of recovery or defense and issues which are merely incidental, supporting and supplemental; in other words in distinguishing "ultimate issues" from incidental, supporting and supplemental issues.

In Words and Phrases, Permanent Edition, Vol. 43, pages 5 to 9, inclusive, we find some definitions gleaned from the cases therein cited which we think helpful in determining when an issue is an "ultimate issue". It is said that the word "ultimate" means "at last, finally, or at the end"; that it "means the last in the train of progression or sequence, tended toward by all that precedes; arrived at as the last result; final". It is further said that evidentiary facts "must be found from testimony and other evidence, while 'ultimate facts' are reasoned conclusions drawn from evidentiary facts found * * *". Again, it is said that an "ultimate fact is the final or resulting fact reached by processes of logical reasoning from detached or successive facts in evidence, and fundamental and determinative of the whole case". It is in this sense that we use the term "ultimate issue".

■ From these definitions and from the many authorities construing the statute, we think it follows that an ultimate issue is composed of either one fact standing alone, or a group of facts taken together, which, if proved, constitutes a complete ground of recovery or a complete defense. Of course, it is apparent that in many suits there may be more than one ground of recovery or defense. In the instant case, however, we think the plaintiff has asserted but one ground of recovery which as a whole constitutes the ultimate issue. Such ultimate issue is whether or not he is entitled to compensation from the defendant for the injury suffered. This ultimate issue or ground of recovery is made up of several component parts. Among these are in substance the following: (1) The sustaining of accidental injuries; (2) the sustaining of such injuries in the course of his employment; (3) the extent of his injuries; (4) the duration of his injuries;

(5) the coverage of the injuries by the policy; and (6) the basis for compensation rate.

██ The issue of coverage not being within itself an independent ground of recovery but being merely a component part of the ultimate issue of plaintiff's right of recovery, and portions of such ultimate issue having been submitted, it follows that the trial court, if there was evidence to sustain his action, was authorized to find upon the issue of coverage in support of the judgment. It is presumed that he did so find and we think such finding is amply supported by the evidence. The assignment is therefore overruled. Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, and authorities cited; North v. Atlas Brick Co., Tex.Com.App., 13 S. W.2d 59; Gulf, C. & S. F. Ry. Co. v. Hines et al., Tex.Com.App., 250 S.W. 1013; Postex Cotton Mill Co. v. McCamy, Tex.Civ. App., 184 S.W. 569, writ refused; Kansas City, M. & O. Ry. Co. of Texas v. Oates, Tex.Civ.App., 185 S.W. 1014; Texas Electric Ry. Co. v. Stewart et al., Tex.Civ.App., 217 S.W. 1081, writ refused; Texas Indemnity Ins. Co. v. Wingo, Tex.Civ.App., 47 S.W.2d 397; Fidelity Union Casualty Co. v. Arnold, Tex.Civ.App., 40 S.W.2d 954, affirmed, Tex.Com.App., 61 S.W.2d 90; International Travelers' Ass'n v. Bettis, Tex.Civ.App., 52 S.W.2d 1059, writ refused.

██ The defendant also challenges the judgment of the trial court on the ground there was no jury finding that the injuries were received in the course of plaintiff's employment with the Lone Star State Drilling Company. No such issue was requested by either party to this suit nor was there any objection made to the court's charge by reason of such omission. Suffice it to say that we think the record as a whole removes this question from the realm of a controverted issue of fact and conclusively shows that the incapacity for which the recovery was allowed was by reason of injuries received by the plaintiff on June 17, 1938, while in the course of his employment with the Lone Star State Drilling Company in Hutchinson County, Texas. If we are mistaken in this conclusion the testimony was sufficient to support a finding of the court thereon, which issue, under the rules above announced, is presumed to have been resolved in support of the judgment.

██ The defendant further contends that in the submission of the issues above relative to sustaining of injuries it was erroneous for the court to inquire of the jury if the injuries were received "on or about June 17th, 1938". The assignment is based upon the objection levelled at the court's charge wherein it was urged that each issue respectively, "by the generality of its inquiry as to date, wholly fails to confine the jury to the particular accident complained of by plaintiff both in his pleadings and in his claim before the Industrial Accident Board as a basis of this suit". While we do not especially approve the uncertainty of the date suggested by the interrogations in the issues in question, we are inclined to the opinion the objections made by the defendant in the trial court were subject to the same criticism as that charged against the issues themselves. As a matter of fact the issues were submitted in the exact language of the pleading. There was no showing made as to what language was contained in the claim filed before the Industrial Accident Board. However, whatever merit the assignment may have we think was removed by the submission of Special Issue No. 7 as to partial incapacity which inquired if the plaintiff "has or will sustain any partial incapacity from injury, if any, received by him June 17th, 1938". Moreover, the record conclusively shows that the injuries for which the recovery was allowed were received on June 17, 1938.

██ The next assignment of the defendant is with reference to Special Issue No. 7, above noted, in regard to partial incapacity. The defendant asserts that the issue did not confine the jury to partial incapacity attributable to injuries supported by the pleadings and proof but permitted the jury to speculate upon incapacity outside the pleadings and proof. We think the issue was not subject to such criticism. It confined the jury to the injury of June 17, 1938, which was the one alleged and proved and the one upon which the recovery was predicated.

The defendant further complains because no issue was submitted to the jury as to percentage of partial incapacity, the court merely submitting the issue as to plaintiff's average wage earning capacity during his incapacity, and asserts there was no proper fact basis for the finding of $7.50 per week as plaintiff's weekly average earning capacity. In this connection it is urged that the plaintiff offered no specific evidence of his earning capacity during his disability and, since the medical testimony of the plaintiff pointed to total and permanent in-

capacity and the medical testimony of the defendant was to the effect there was no incapacity of any sort, the jury was unwarranted in striking a middle ground by finding partial incapacity.

 With this contention we cannot agree. There was an abundance of testimony introduced relative to the injuries of the plaintiff and as to his general physical condition and ability to work. It is true that the medical testimony of the plaintiff's witnesses was to the effect that plaintiff was totally and permanently disabled. It is also true that the medical testimony of the defendant tended to show that no incapacity existed. It has been held, however, that the "probative force to be given to the testimony of experts is within the province of the jury and there is no rule of law which requires them to give conclusive effect to such testimony". Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313, 316, writ refused. Nor do we think it was necessary for the plaintiff to obtain a finding as to the percentage of his partial disability. Traders & General Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682; Southern Surety Co. v. Shoemake, Tex.Civ.App., 16 S.W.2d 950; Lloyds Casualty Co. v. Meredith, Tex.Civ.App., 63 S.W.2d 1051. The trial court followed the method suggested in section 11 of article 8306, R.C.S., which requires the association to pay the "injured employé a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity * * *". Moreover, the jury as trier of the facts was at liberty to weigh all the testimony and from it as a whole, in the exercise of their discretion, fix the amount of plaintiff's weekly wage earning capacity at $7.50. This assignment is overruled.

 As above noted, the jury found that plaintiff's partial incapacity did not commence on June 17, 1938, the date of the injury, but instead began on August 25, 1938, some ten weeks later, and that it would end on May 25, 1944, comprising a period of 300 weeks, the maximum allowed by law. The trial court decreed a recovery for the full 300 weeks beginning on August 25, 1938. The defendant contends that from this 300-week period the court should have deducted 10 weeks from the recovery upon the theory that the partial incapacity must necessarily date from the injury and

can in no event exceed 300 weeks from such date. It will be noted that section 10 of article 8306 provides in the case of total incapacity the period covered by the compensation shall not be greater than four hundred and one weeks "from the date of the injury". But no such provision is contained in section 11 governing the compensation for partial incapacity alone. The only reference to the date of the injury is in the last clause of the section which provides that in "no case shall the period of compensation for total and partial incapacity exceed four hundred and one weeks from the date of injury". The recovery in the instant case does not violate the latter provision, nor do we think it is prohibited by any of the provisions of sections 10 or 11.

Lastly, the defendant challenges the judgment by reason of the method pursued by the court in determining the amount of compensation to award the plaintiff. The court found that the plaintiff was entitled to recover the sum of $19.16 per week from August 25, 1938, for a definite period of 300 weeks. The court further found that 82 weeks of such period had expired at the date of the judgment, which was March 28, 1940; that the accrued compensation on that date was $1,571.12 with $74.32 interest, or a total accrued sum of $1,645.44; that the plaintiff was further entitled to recover $19.16 per week for the remaining 218 weeks beginning March 28, 1940; that the plaintiff was represented by Johnson & Oliphant, attorneys, who had a contract of employment for one-third of the amount recovered; and that one-third of the amount accrued and one-third of the weekly payments not accrued should be paid to said attorneys. Judgment was rendered accordingly.

From the uncontroverted testimony of the bookkeeper for the Lone Star State Drilling Company, who testified from the records of his company, it is conclusively shown that during the year immediately preceding plaintiff's injury he worked a total of 305 days for such company, for which he was paid the total sum of $2,051. It was further shown that for the first 221 working days of such period he was paid at the rate of $7 per day, and for the balance of the time, 84 days, he was paid $6 per day. It is apparent that in ascertaining the weekly compensation rate of $19.16 as the basis for the recovery herein, the trial court divided the $2,051 (plaintiff's actual earnings for

the year previous to his injury) by 52, subtracted from the quotient ($39.44) the sum of $7.50 as found by the jury to have been plaintiff's average weekly wage earning capacity, and then took 60% of the remainder ($31.94) for the weekly compensation rate, which was $19.16.

We are of the opinion that in arriving at the weekly compensation rate the court made a slight error of about 41¢ per week in excess of that allowed by law. The plaintiff having worked in the same employment at a daily wage for 305 days during the twelve months immediately preceding the injury, we think there can be no question that he worked substantially a year within the meaning of subdivision 1 of section 1 of article 8309, R. C. S. Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553. Such being true, the "average weekly wages" should be arrived at by taking one-fifty-second of plaintiff's "average annual wages" rather than one-fifty-second of his actual annual earnings. In other words, his average daily wage should be multiplied by 300 to obtain his "average annual wages" and the result divided by 52 to obtain his "average weekly wages", as provided in subdivisions 1 and 5 of the article. There are two instances, it seems, where facts may justify a variation from the application of this rule where the employee has been employed the full year preceding his injuries. One of these instances is illustrated in the Williams case, supra, wherein the claimant, during the twelve months preceding his injuries, had worked 363.6 days for the same employer at various classes of labor at wages ranging from $4.50 per day to $6 per day. Justice Critz, in writing the opinion in that case, pointed out how unfair it would be in such a situation to determine the average annual wages by multiplying the employee's average daily wage by 300 when he had worked 63.6 days in excess of 300. To the same or similar effect are the cases of Texas Employers' Ins. Ass'n v. Storey et al., Tex.Com.App., 17 S.W.2d 458, and Howard et al. v. Texas Employers' Ins. Ass'n, Tex.Com.App., 292 S.W. 529. Another instance may be illustrated by the case of Texas Employers Insurance Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399, wherein the claimant was employed the full year at a regular monthly salary. But no such conditions exist in the instant case which would bring it within the rule expressed in either the Clack case or the Williams case. The claimant herein worked in the same employment for a daily wage and worked "substantially the whole of the year immediately preceding the injury". Therefore his "average annual wages" would consist of 300 times his "average daily wage", and his "average weekly wages" would amount to one-fifty-second part of his "average annual wages". Millers' Indemnity Underwriters v. Schrieber et al., Tex.Civ.App., 240 S.W. 963, 970, writ refused; Fidelity Union Casualty Co. v. Carey et al., Tex.Civ.App., 38 S.W.2d 169, affirmed, Tex.Com.App., 55 S.W.2d 795; Federal Underwriters Exchange v. Guest et al., Tex.Civ.App., 129 S.W.2d 708. Measured by this rule, to arrive at the correct compensation rate, we should first divide $2,051 by 305 to obtain plaintiff's "average daily wage" for the year preceding the injury. The quotient amounts to $6.72. This amount should be multiplied by 300 to ascertain the statutory (not actual) "average annual wages". The result is $2,016. The latter amount should then be divided by 52 to obtain the statutory "average weekly wages". The quotient is $38.76. From the latter amount should be deducted the $7.50 found by the jury as plaintiff's "average weekly wage earning capacity" during his partial incapacity, which leaves a balance of $31.26. Sixty per cent of the latter amount is $18.75, which amount, instead of $19.16, should have been the weekly compensation rate upon which to predicate the recovery herein.

The defendant's motion for rehearing is overruled.

The judgment of the trial court is reformed so as to allow a recovery as of the date of the judgment of $1,537.50 for the first 82 weeks of accrued compensation, with interest on the respective past due installments therein included at 6% per annum from their respective due dates, and for the 218 weekly payments thereafter accruing, the weekly compensation rate of $18.75 is substituted for that found by the trial court, the plaintiff to recover two-thirds of all such amounts and the attorneys, Johnson & Oliphant, their one-third; and as reformed the judgment should be affirmed, and it is so ordered.

Reformed and affirmed.