## FEDERAL UNDERWRITERS EXCHANGE v. HARWELL.

### No. 2428.

Court of Civil Appeals of Texas. Waco.

Dec. 11, 1941.

Rehearing Denied Jan. 8, 1942.

W. R. Saunders, Claude Williams, and Henry D. Akin, all of Dallas, for appellant.

Fitzpatrick & Dunnam, of Waco, and Robt. F. Cherry, of Clifton, for appellee.

**461**

HALE, Justice.

This a workman's compensation case. The jury answered all issues favorable to appellee, Ralph I. Harwell, and thereupon the court rendered judgment in his favor and against appellant, Federal Underwriters Exchange, as for total permanent incapacity, payable in a lump sum.

■■ Appellant's first point is that the trial court committed reversible error in submitting special issues 2, 6 and 7 concerning the injuries sustained by appellee without confining the jury to the injuries pleaded. The abstract proposition of law advanced under this point is correct. When a compensation case is submitted to a jury, the court should so frame the issues as to limit the jury to a consideration of the injuries raised by the pleadings and tendered by the evidence. However, we do not think the record in this case shows any violation of this well recognized rule of law.

Appellee alleged, in substance, that on or about June 12, 1940, while standing in an awkward position and lifting a heavy sack of grain, he was thrown off his balance and thereby caused to sustain an accidental injury to his back and side. He described the character and nature of his injuries in great detail, alleging that the same resulted in his total permanent incapacity to work. He testified that he was hauling five 100-pound sacks of milo to a grinding machine on June 12th; that after he had emptied two of the sacks into the grain hopper he was in the act of lifting the third sack when something pulled loose and he fainted and fell, and continuously since that time had suffered from pain in his back and left side. Two doctors testified on the trial that in their opinion appellee had injured his back and side as a result of the claimed accident. One of these doctors took X-ray pictures which he thought disclosed a filling defect between the eleventh and twelfth thoracic vertebrae that was caused by a lesion pressing on the spinal cord and which, if treated by radical surgery, might result in the death of the patient.

Special issue No. 1 in the court's charge inquired of the jury as to whether on or about June 12th appellee lifted a sack of milo in the place of business of his employer; if so, special issue No. 2 inquired as to whether he sustained an accidental injury to his back and side when he lifted the sack of milo on June 12th; and if so,

issues 3 and 4, respectively, inquired as to whether he was an employee and was acting in the course of his employment, and 5 as to whether he sustained any loss of capacity to work as a result of such accidental injury, if any, so sustained; and if so, issues 6 and 7, respectively, inquired as to whether such accidental injury caused total and permanent incapacity to work. We are therefore of the opinion that the manner in which the court submitted the issues as to whether appellee sustained an accidental injury to his back and side while acting in the course of his employment which resulted in his total permanent incapacity to work is not subject to the criticism urged.

■ Under its second point, appellant says the judgment should be reversed because the court refused to submit to the jury the following requested issue: "Do you find from a preponderance of the evidence that the incapacity, if any, of the plaintiff, Ralph I. Harwell, is not due to and caused by an injury, if any, sustained by him while connecting up a car of molasses?" Such issue was not affirmatively raised by the pleadings of either party, appellant having proceeded to trial solely upon a plea of general denial. On cross-examination, appellee was asked, in substance, if he did not state to a Mr. Trotter in the presence of Dr. Goodall that he had injured himself while connecting a pipe to a tank car of molasses, and he denied making such statement. Trotter was introduced as a witness for appellee and on cross-examination he testified that appellee had stated to him that he first thought he was injured while connecting a tank car of molasses, but on the afternoon of the same day he told witness that he thought he was injured while lifting a 100-pound bag of milo into the feed hopper. There was no other evidence which in anywise tended to raise the requested issue. We can find nothing in the record which indicates the nature, extent or duration of such injury, if any, or that there was any causal connection between the same and the incapacity herein complained of. The assignments under the second point are accordingly overruled.

■ Appellant's third point is that the court erred in submitting the lump sum issue conditioned upon an affirmative finding of total and permanent disability. We overrule this contention for the reasons set forth in the cases of Traders & Gen-

eral Ins. Co. v. Babb, Tex.Civ.App., 83 S.W.2d 778, point 3, and Traders & General Ins. Co. v. Offield, Tex.Civ.App., 105 S.W.2d 359, point 6.

■ The fourth point presents the contention that the court erred in defining partial incapacity to mean "where an employee by reason of an injury sustained in the course of employment is only able to perform a part of the usual duties of a workman, but nevertheless is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury, whereby he suffered a depreciation of or reduction in his earning capacity." Appellant objected to this definition upon the grounds that the same was insufficient and inadequate, too broad and comprehensive and placed a more onerous burden upon it than that imposed by law. Practically the same definition was given and approved over the same objections in the case of Traders & General Ins. Co. v. Wright, Tex.Civ. App., 95 S.W.2d 753, point 1; Id., 132 Tex. 172, 123 S.W.2d 314.

But whether the definition was or was not absolutely correct, we believe the objections interposed were insufficient and placed a more onerous burden upon the trial court than that imposed upon him by law in his effort to properly submit a defensive issue for the benefit of appellant. No objection is here presented to the court's definition of total incapacity upon which appellee's right of recovery is predicated. Appellant did not tender any requested definition of partial incapacity. The definition as given undoubtedly embraced some correct elements of the term submitted and we do not think the case should be reversed in the absence of a specific objection to any erroneous element which the definition might have contained, even though we should not approve the charge in its entirety.

The fifth point relates to three objectionable arguments of counsel for appellee to the jury. It appears that the court sustained the objections to two of the arguments thus complained of and the jury was requested in each instance not to consider the same. Without setting forth these several arguments and the objections thereto, we deem it sufficient to say that we have carefully examined the three bills of exception and the qualification attached to each by the trial court and in our opinion no reversible error is thereby shown.

■■ The last point presents the contention that the judgment is excessive in that the recovery awarded to appellee is based upon the court's finding of a compensable rate of $10.74 per week when under the undisputed evidence and the law applicable thereto the correct rate is $10.-41 per week. The trial court found in his judgment that appellee worked 306 days during the year immediately preceding his injury for which he was paid the total sum of $930.84; that his average weekly wage was 1/52nd part of his total annual wage, to-wit: $17.90 per week, and 60% of such average weekly wage was $10.74 which was made the predicate for the compensation awarded. Appellant insists that appellee's average daily wage was $930.84 divided by 306 days, or the sum of $3.04 per day, with the result that his average annual wage under the applicable law was 300 times $3.04, or the sum of $912, which should have been divided by 52 weeks in order to arrive at the average weekly wage under the statute. This contention was sustained in the case of Texas Employers Ins. Ass'n v. Reed, Tex.Civ.App., 150 S.W.2d 858, error dismissed judgment correct, and results in a compensable rate of $10.52 per week.

Appellee asserts that the compensable rate of $10.74 should be upheld because appellant paid the first four maturing installments of compensation totalling $43.-76 for which it received credit in the court's judgment and thereby made a binding admission of a compensable rate of $10.94 per week. We find no reference in the pleadings of either party to any payments having been made by appellant. The only evidence we have found as to previous payments is the testimony of appellee when he was asked on cross-examination: "During the time, Ralph, that you were off, that is the time you were not down at the mill, for about four weeks, or something five, I believe, the insurance company paid you a weekly compensation, sent you a check each week did they not, and stopped it when you went back down there to work?" and to which questions the witness answered: "Yes, Sir." It thus appears that there was neither pleadings nor evidence in the case as to the amount of compensation which appellant might have paid to appellee over a period of four

or five weeks and consequently we do not think the record before us shows any binding admission as to the compensable rate applicable herein.

The judgment of the trial court is therefore reformed so as to allow a recovery as of the date of the judgment on April 13, 1941, for 43 weeks accrued compensation at the rate of $10.52 per week, together with interest thereon at the rate of 6% per annum from the date of maturity of each weekly installment thus matured, and for 358 additional weeks compensation at the rate of $10.52 per week, less the statutory discount of 6% per annum for advance payments, amounting to the total lump sum of $3,564.35, with interest on such lump sum from the date of such judgment at the rate of 6%, and the judgment as so reformed is hereby affirmed.